**No. 18-10713**

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

UNIVERSITY BAPTIST CHURCH OF FORT WORTH,

*Plaintiff-Appellant.*

v.

YORK RISK SERVICES GROUP INCORPORATED,

*Defendant-Appellee.*

---

On appeal from the United States District Court
for the Northern District of Texas
Case No. 4:17-CV-962-A, Judge John H. McBryde

---

**BRIEF OF APPELLANT**

---

William D. Taylor (TX 24046954)
Taylor & Taylor Law, P.C.
4115 Highgrove Dr.
Arlington, TX 76001
817.483.8388
Fax: 817.483.8390
Email: wtaylor@taylorandtaylorlaw.com
*Counsel for Appellant*

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to 5th CIR. R. 28.2.1, Appellant, University Baptist Church of Fort Worth, submits this Certificate of Interested Persons:

(1)  Number and Style of the Case:

No. 18-10713, *University Baptist Church of Fort Worth v. York Risk Services Group Incorporated*

(2) The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| | |
|---|---|
| Appellant: | University Baptist Church of Fort Worth |
| Counsel for Appellant: | William D. Taylor, appellate counsel; Timothy Hoch, trial counsel |
| Appellee: | York Risk Services Group Incorporated |
| Counsel for Appellee: | Robert Michael Rosen and Ryan Starbird, appellate and trial counsel; David A. Walton, trial counsel |
| Other: | Co-defendant Lexington Insurance Company; Brett A. Wallingford, Raven M. Atchison, and Walter W. Cardwell, IV, Lexington's trial counsel[1] |

/s/ William D. Taylor
William D. Taylor
Counsel for Appellant

---

[1] As noted elsewhere, the claims against Lexington Insurance Company remained pending in the trial court, as final judgment was issued only against York.  Therefore, Lexington is included as an interested party out of abundance of caution.

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

This appeal involves the dismissal of claims against an insurance adjustor in a first-party, commercial property insurance case. Its resolution will involve a number of issues regarding interpretation of Texas statutes and the application of federal pleading standards to these statutes. While Appellant believes the law is clear under the precedents of this Court and the Texas Supreme Court, the issues have nevertheless been the subject of conflicting opinions among the district courts in this Circuit. As such, Appellant believes that the Court's decisional process would be aided by oral argument.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ............................................................. ii

STATEMENT REGARDING ORAL ARGUMENT ................................................... iii

TABLE OF AUTHORITIES .................................................................................... v

JURISDICTIONAL STATEMENT ........................................................................... 1

STATEMENT OF ISSUES PRESENTED ................................................................. 2

STATEMENT OF THE CASE ................................................................................ 3

SUMMARY OF THE ARGUMENT ....................................................................... 10

ARGUMENT ..................................................................................................... 12

I.    Applicable legal standards ......................................................................... 12

II.   The Court should reverse the district court's dismissal of claims under Chapter 541 of the Insurance Code. ........................................................................... 14

    A.    This Court's precedents and the more thoroughly-reasoned district court opinions demonstrate that insurance adjustors may be liable under Sections 541.060(a)(2), (a)(3), and (a)(7) ...........................................................16

    B.    The plain language of Section 541.060(a)(1) demonstrates that it is not limited to representations about policy terms. ........................................................ 20

    C.    UBC pled sufficient claims under these sections. ............................................. 22

III.  The Court should reverse the district court's dismissal of claims under the Deceptive Trade Practices Act ......................................................................... 26

    A.    Rule 9(b) does not apply to all sections of the DTPA ...................................... 26

    B.    UBC has sufficiently pled a claim under the DTPA. ....................................... 27

IV.   The Court should reverse the district court's dismissal of claims for promissory estoppel. .............................................................................................................28

V.    Conclusion ................................................................................................. 31

CERTIFICATE OF SERVICE ............................................................................... 32

CERTIFICATE OF COMPLIANCE ....................................................................... 33

# TABLE OF AUTHORITIES

## Federal Cases

*Access Mediquip, L.L. C. v United Healthcare Insurance, Co.,* 662 F3d 376 (5th Cir. 2011) …………………………………………….……… 25

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ……………………………..……. 12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) …………………...…… 12

*Benchmark Elec., Inc. v. J.M Huber Corp.*, 343 F.3d 719 (5th Cir. 2003) ……. 27

*Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585 (8th Cir. 2009) ……………. 14

*Denley Group, LLC v. Safeco Insurance Company of Indiana*, No. 3:15-CV-1183-B, 2015 WL 5836226 (N.D. Tex.) ……………………………………………… 15

*Gasch v. Hartford Acc. & Indem. Co.,* 491 F.3d 278 (5th Cir. 2007) …………16-19

*Gen. Elec. Capital Corp. v. Posey*, 415 F.3d 391 (5th Cir. 2005) ………...…… 12

*Gulf Coast Hotel-Motel Ass'n v. Miss. Gulf Coast Golf Course Ass'n*, 658 F.3d 500 (5th Cir. 2011) …………………………………………..… 13, 21-22, 29

*Khan v. Allstate Fire and Cas. Ins. Co.*, NO. CIV.A. H-11-2693, 2012 WL 1601302 (S.D. Tex.) …………………………………………...………… 13, 26

*Jacked Up, LLC v. Sara Lee Corp.*, 854 F.3d 797 (5th Cir. 2017) ………… 14, 29

*Johnson v. City of Shelby*, 135 S. Ct. 346 (2014) (per curium) ……………… 13, 29

*Kel Lee Props. v. Evanston Ins. Co.,* No. 2:17-CV-292, 2018 WL 286758 (S.D. Tex.) …………………………………………………………...… 20

*Lane v. Halliburton*, 529 F.3d 548 (5th Cir. 2008)……………………………. 13

*Lopez-Welch v. State Farm Lloyds*, No. 3:14-CV-2416-L, 2014 WL 5502277 (N.D. Tex.) ……………………………………………………………….. 16

*Matrixx Initiatives, Inc. v. Siracusano,* 563 U.S. 27, 47 (2011)………….. 13, 22, 29

*Messersmith v. Nationwide Mut. Fire Ins. Co.*, 10 F. Supp. 3d 721 (N.D. Tex. 2014) ……………………………………………………… 15-21, 23, 25

*Michaels Bldg. Co. v. Ameritrust Co., N.A.,* 848 F.2d 674 (6th Cir. 1988) …… 14

*Progressive Island, LLC v. Scottsdale Insurance Company*, No. 3:13-CV-0741-M, 2013 WL 6065414 (N.D. Tex.) …………………………………..……….. 16

*Roach v. Allstate Vehicle & Prop. Ins. Co.,* 3:15-CV-3228-G, 2016 WL 795967 (N.D. Tex.) …………………………………………………15, 17-19

*Rogers v. Bromac Title Servs., L.L.C.,* 755 F.3d 347(5th Cir. 2014)…………… 12

*St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425 (5th Cir. 2000) ……..…14, 29

*Scheuer v. Rhodes*, 416 U.S. 232 (1974)  ………………………………… 12

*Severance v. Patterson,* 566 F.3d 490 (5th Cir. 2009) ………………… 13, 22, 24

*Skinner v. Switzer*, 562 U.S. 521 (2011) ………………………………14, 29

*United States Fire Ins. Co. v. Confederate Air Force,* 16 F.3d 88 (5th Cir. 1994)…. 20

*Vargas v. State Farm Lloyds*, 216 F. Supp. 2d 643 (S.D. Tex. 2002) ……… 16, 19

*Wilson v. Birnberg*, 667 F.3d 591 (5th Cir. 2012) ………………………….. 13


**State Cases**

*Liberty Mutual Ins. Co., v. Garrison Contractors, Inc.,* 966 S.W.2d 482 (Tex. 1998)…….…………………………………………………………….. 27


**Federal Statutes**

28 U.S.C. § 1332………………………………………………………… 27


**State Statutes**

Tex. Bus. & Com. Code § 17.46……………………………………… 27

Tex. Bus. & Com. Code § 17.50….....……………………… 11, 26-27

Tex. Ins. Code § 542.060………………………………………....… *passim*

Tex. Ins. Code § 542.061……………………………………………………10, 20

**Federal Rules**

Fed. R. Civ. P. 8………………………………………………………… 12, 22

Fed. R. Civ. P. 9……………………………………….… 2, 11, 12, 24, 26

Fed. R. Civ. P. 12…………………………………………………………  1

Fed. R. Civ. P. 54…………………………………………………………...1

## JURISDICTIONAL STATEMENT

The district court determined it had jurisdiction under 28 U.S.C. § 1332, by virtue of its final judgment dismissing a non-diverse party.  This Court has jurisdiction over the district court's final judgment as to York Risk Services Group Incorporated, pursuant to 28 U.S.C. § 1291.  *See also* Fed. R. Civ. P. 54(b).  Appellant timely filed its notice of appeal on June 14, 2018.  ROA.458-59.

**STATEMENT OF ISSUES PRESENTED**

1.    Whether the trial court erred in dismissing Appellant's claims under Chapter

541 of the Texas Insurance Code?

a.  Can Sections 541.060(a)(2), (a)(3), and (a)(7) apply to adjustors?

b.  Is Section 541.060(a)(1) limited to misrepresentations of policy terms?

c.  Did Appellant sufficiently plead claims under Sections 54.060(a)(1), (a)(2),

(a)(3) or (a)(7)?

2.    Whether the trial court erred in dismissing Appellant's claims under the Texas

Deceptive Trade Practices Act (DTPA)?

a.  Does Rule 9(b) apply to all DTPA claims or only to those claims that have a

fraud element?

b.  Did Appellant sufficiently plead a claim under the Texas DTPA?

3.    Whether the trial court erred in dismissing Appellant's claims based on

promissory estoppel?

2

## STATEMENT OF THE CASE

This appeal involves a portion of a first-party insurance suit brought by Plaintiff-Appellant, University Baptist Church of Fort Worth ("UBC"), and it is unusual for several reasons.  First, the appeal involves the dismissal of only one defendant (the adjusting company, York Risk Services Group Incorporated), with the claims against the insurer (Lexington Insurance Company) being left pending at the district court.

Second, the factual scenario is quite unusual as to the particular portion of the claims at issue—coverage related to code upgrades.  As discussed in more detail below, the short version is that York and Lexington wrongfully refused to pay the policy limits on a roofing bid in November 2016, which would have left UBC with only $35,000 or so in uncovered costs.  Instead, York instructed the roofer to proceed on a "time and materials" basis, which ultimately increased UBC's costs by almost $600,000 more than the fixed bid.   In other words, the failure to properly adjust and pay the claim resulted in an almost-twentyfold increase in out-of-pocket costs for UBC.  A more detailed recitation of the case is as follows.

As alleged in the Amended Complaint (the live pleading at the time of appeal), Lexington issued a commercial property insurance policy covering UBC's property at 2301 N. Collins Street, Arlington, Texas (the "Property") during all relevant time periods.  ROA.238 at ¶¶ 5, 6.  The policy included coverage for wind, hail, and storm damage, as well as a code and ordinance endorsement.  ROA.239, 243 at ¶¶ 12, 37.

3

On March 17, 2016, the Property was hit by a large hailstorm, during which the Property sustained heavy roof and structural damage. ROA.238 at ¶ 7. After Plaintiff discovered the hail, wind, and storm damage, Plaintiff notified Defendant Lexington's agent about this loss on March 21, 2016. ROA.238 at ¶ 7. Defendant Lexington hired Defendant York to adjust the loss; Defendant York, in turn, assigned its employee, Kevin Forman, ("Forman") to examine the Property and adjust the loss. ROA.238 at ¶ 8.

On November 1, 2016, Defendant Lexington issued a partial payment to Plaintiff in the amount of $157,000.00, which was for far less than the undisputed amount that Defendant Lexington had already agreed to pay. ROA.239 at ¶ 10. Instead, the "approved Proof of Loss and agreed scope and costs" for the replacement of the roof was in the amount of $586,040.20. ROA.239 at ¶ 11. However, this aspect of the dispute is not the subject of this appeal. Rather, this appeal relates to the code and ordinance endorsement, as Forman's correspondence noted that "code items have been raised and this is being investigated." ROA.239 ¶ at 12.

On September 26, 2016, Forman informed Plaintiff by e-mail that an engineer was being retained. ROA.239 at ¶ 14. In this same e-mail Forman advised Plaintiff: "When you receive a copy of the engineering report and related invoice from Jeff Eubank Roofing, please forward me a copy for review *so we can develop an agreed scope for the additional decking required.*" ROA.239 at ¶ 14 (emphasis added  in

4

allegations.) On November 18, 2016, Shingler submitted his report ("Shingler report") to Jeff Eubank Roofing which, on that same date, provided the report to Forman. ROA.239 at ¶ 15.

By e-mail dated November 23, 2016, Jeff Eubank Roofing submitted to Forman a code upgrade bid of $285,798.00. ROA.239 at ¶ 16. This bid would have allowed UBC to complete the code upgrades for an out-of-pocket cost of **only $35,798.00**. *Compare* ROA.239 at ¶ 12 *with* ROA.239 at ¶ 16.

Rather than effectuating payment (up to policy limits) on the fixed bid, York chose to have the roofer proceed on a "time and materials" basis, without explaining the impact of the change and obtaining UBC's informed consent. ROA.240, 242, 244 at ¶¶ 19, 31, 46. More specifically, in January 2017, Forman met with Jeff Eubank Roofing and confirmed by e-mail "that we agreed to measure the cost of re-decking the main chapel by time and material due to the uniqueness of the project." ROA.240 at ¶ 19. On January 27, 2017, Forman sent Jeff Eubank Roofing an e-mail with forms that were to be submitted and instructions that the forms be sent "within two days of the date of activity so we can make sure there are no concerns or misunderstandings as the project moves forward." ROA.240 at ¶ 20. On February 27, 2017, Forman advised Plaintiff "we are on the same page with the rates JE Roofing has submitted: however, we need to know when they plan to begin as well as sending their documentation in at least every two days so we can make sure anything **unexpected**

5

can be addressed quickly." ROA.240 at ¶ 21 (emphasis added). Then on February 28, 2017, Forman sent another e-mail to Plaintiff which read:

> I have informed the carrier that UBS has verified that the changes being made to the decking of the main church for the installment of new tile is being required and enforced by the city of Fort Worth. **Code upgrade costs are indemnified once incurred** when they fall under this city of FT. Worth enforcement. Due to the uniqueness of the operation and since it hasn't been done before, this is why we are tracking the costs in this way as agreed with JE Roofing."

ROA.240 at ¶ 22 (emphasis added in complaint). Likewise, Forman had told UBC's pastor over the telephone that the insurance would provide the funds for the work required by the engineer. ROA.241 at ¶ 25.

From the foregoing representations, a reasonable person would have believed that York expected the time-and-material costs to be less than the fixed-bid amount, that York would closely monitor the repairs to minimize any "unexpected" costs above the fix-bid amount, and that the insurance policy would indemnify UBC for the costs incurred above this amount.

Instead, on April 28, 2017, Jeff Eubank Roofing sent an invoice to Plaintiff, which included "Extras" consisting of seven weeks of charges totaling **$582,944.75**. ROA.241 at ¶ 25. Ultimately, Jeff Eubank Roofing ultimately charged $864,148.49 in "time and materials" related to the code upgrade for Plaintiffs Property. ROA.241 at ¶ 25.

Although Plaintiff's roofing contractor regularly submitted the time-and-materials invoices required York, York never identified anything "unexpected" in the

6

invoices; indeed, neither York nor Lexington informed Plaintiff that the code upgrade costs were exceeding the policy limits until May of 2017. ROA.240-42 at ¶¶ 21, 23, 27, 34.

Since York never identified anything "unexpected" in the time-and-materials costs totaling $864,148.49, the allegations indicate that York always "expected" that the "time and materials" costs would far exceed the original, fixed bid . . . and thus would require full payment up to the policy limits of $250,000. *See* ROA.240-42 at ¶¶ 21, 27, 32, 34. Yet York failed to effectuate payment on the fixed bid, and instead agreed to a time-and-materials approach that increased UBC's out-of-pocket costs by **almost twentyfold** (from $35,798.00 on the fixed agreement to $614,148.49 on the time-and-materials agreement). *See* ROA.239, 242 at ¶¶ 12, 16, 32. As such, York violated Texas Insurance Code sections 541.060(a)(2), (a)(3), and (a)(7), as well as the Texas DTPA. ROA.248-50; *see also* Tex. Ins. Code § 541.060 (2016); Tex. Bus. & Com. Code §§ 17.046, 17.050(a)(4).

Moreover, as noted above, York's representations reasonably led UBC to believe that the time-and-materials costs would be less than the fixed-bid amount, that York would closely monitor the repairs to minimize any "unexpected" costs above the fix-bid amount, and that the insurance policy would indemnify UBC for the costs incurred above this amount. ROA.239-242 at ¶¶ 14, 19-25. By relying on York's representations, UBC not only lost the benefit of the bargain provided by the fixed bid of $285,798.00, but also lost the chance to mitigate this loss by refusing the work

or re-bidding the work.  ROA.242 at ¶¶ 29-31.  Furthermore, UBC had to take out a loan to pay for the hundreds of thousands of dollars of additional work that was not "unexpected" to York, incurring additional damages.  ROA.242 at ¶ 33.  As such, York violated Texas Insurance Code section 541.060(a)(1) and the Texas DTPA.  ROA.248-50.

In light of the foregoing, UBC filed suit in state court against Lexington, York, and York's employee, Forman.  ROA.23-41.  On December 4, 2017, this action was removed to the Northern District of Texas.  ROA.7-15.  UBC then moved to remand, on the ground that Forman was non-diverse.  ROA.156-62.  The district court denied remand and issued a final judgment dismissing Forman, without prejudice.  ROA.224-36.  Although UBC disagreed with that ruling, it did not appeal that final judgment, for efficiency reasons, and instead filed an amended complaint against York and Lexington only.  ROA.237-53.  As to York, UBC asserted the aforementioned claims under the Insurance Code and DTPA, as well as an alternative claim based on promissory estoppel.  ROA.248-50

On February 22, 2018, York filed the motion to dismiss that is at issue on this appeal.  ROA.269-91.  The district court granted that motion, issued a memorandum opinion and order, and issued a final judgment (as to York only) on May 16, 2018.  ROA.422-38.  A week later, the district court issued an amended memorandum opinion and order that that "replace[d] in its entirety the memorandum opinion and order signed in this action on May 16, 2018" and that purported to be "effective May

16, 2018." ROA.439-57. UBC questions whether a post-judgment amended order can be retroactively effective to the date of the original order, or whether the amended order implicitly serves as an order modifying the judgment under Rule 59(e) (which would extend the appeal deadline). However, the issue is moot, as UBC filed its notice of removal on June 14, 2018, within 30 days of the original entry of final judgment. ROA.458-59. The claims against Lexington remained pending before the district court.

## SUMMARY OF THE ARGUMENT

The district court dismissed all three categories of UBC's claims against York Risk Services Group Incorporated: (1) claims under Chapter 541 of the Texas Insurance Code; (2) claims under the Texas Deceptive Trade Practices Act (DTPA); and (3) a claim for promissory estoppel. Dismissal of all three sets of claims was in error for multiple reasons.

As to the Insurance Code claims, the district court was mistaken in holding as a matter of law that adjustors are not subject to Sections 541(a)(2), (a)(3), and (a)(7). Instead, the precedents of this Court and the more thoroughly-reasoned opinions of the district courts demonstrate that adjustors may be subject to each of these provisions.

Likewise, the district court was mistaken in holding that Section 541(a)(1) is limited to representations about policy terms. To the contrary, such a ruling ignores the specific language of Section 541.060(a)(1) and renders part that language meaningless.

In turn, the allegations are more than sufficient to state a claim under these sections. For instance, the allegations indicate that York expected the cost of repairs to exceed the policy limits of $250,000. Yet York failed to effectuate a prompt, fair, and equitable settlement for policy limits when UBC had the opportunity to have the repairs completed for a fixed amount of only $35,798.00 more than the policy limits. Instead, York chose to have the roofer proceed on a "time and materials" basis

10

(without UBC's informed consent), which ultimate resulted in almost $600,000 in extra costs to UBC. Furthermore, when shifting to a time-and-materials approach, York also made representations that reasonably implied it would contain costs and that any overruns would be indemnified. In reliance on these representations, UBC not only lost the benefit of the bargain on its fixed-cost bid, discussed above, but also lost the opportunity to mitigate this loss. Thus, UBC has stated a claim for violations of the Insurance Code.

As to the DTPA claims, the district court erred in holding that all DTPA claims are subject to Rule 9(b), as opposed to only those claims that have an element of fraud. In turn, since UBC stated claims under the Insurance Code, it also stated a claim under Texas Business and Commerce Code Section 17.50 (since that section provides that violations of the insurance code *also* violate the DTPA).

Alternatively, the same allegations support a claim for promissory estoppel. Accordingly, the district court's decision should be reversed.

11

## ARGUMENT

### I.    STANDARD OF REVIEW

The motions to dismiss are subject to de novo review, under the same standards applicable to the district court.  *See, e.g., Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014); *Gen. Elec. Capital Corp. v. Posey*, 415 F.3d 391, 395 (5th Cir. 2005).

### II.    APPLICABLE LEGAL STANDARDS

In deciding a motion to dismiss for failure to state a claim, the court's task is to determine "not whether a [claimant] will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  The specific standards for deciding this issue depend on the applicable pleading standards.  Under the standards of Rule 8, set forth in *Twombly* and *Iqbal*, a plaintiff or counterclaimant may not merely rest on "labels and conclusions," and a "formulaic recitation of the elements of a cause of action will not do."  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561-63 (2007).  However, *Twombly* and *Iqbal* do not impose a probability requirement or require detailed factual allegations; instead, they require only that the plaintiff state a plausible claim for relief that rises above mere speculation.  *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Thus, dismissal is inappropriate if factual allegations are "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 696 (citations and footnote omitted).

12

Rule 9 alters the ordinary pleading requirements by requiring averments of fraud (such as who made a fraudulent statement, when the statement was made, etc.) to be pled with particularity.   Fed. R. Civ. P. 9(b).  However, this requirement does not apply to allegations regarding state of mind.  Instead, "[m]alice, intent, knowledge, or other conditions of mind may be alleged generally." *Id.*  Moreover, Rule 9 does not apply at all to claims that are not based in fraud or mistake, and therefore does not apply to claims for improper adjusting, prompt-pay violations, etc.  *See Khan v. Allstate Fire & Cas. Ins. Co.,* No. Civ. A. H-11-2693, 2012 WL 1601302, at *9 (S.D. Tex. May 7, 2012).

In ruling on a motion to dismiss, the Court must "construe the complaint in the light most favorable to the [claimant] and draw all reasonable inferences in the [claimant's] favor." *Severance v. Patterson,* 566 F.3d 490, 501 (5th Cir. 2009).  In doing so, the allegations must be read "as a whole." *E.g., Matrixx Initiatives, Inc. v. Siracusano,* 563 U.S. 27, 47 (2011); *Gulf Coast Hotel-Motel Ass'n v. Miss. Gulf Coast Golf Course Ass'n,* 658 F.3d 500, 506 (5th Cir. 2011). In other words, Rule 12(b)(6) does not permit a court to dismiss a claim unless the court determines "'it is beyond doubt' that [the claimant] 'cannot prove a plausible set of facts' to support his allegations." *Wilson v. Birnberg,* 667 F.3d 591, 600 (5th Cir. 2012) (quoting *Lane v. Halliburton,* 529 F.3d 548, 557 (5th Cir. 2008)).

Furthermore, a complaint is not required to include argument or explanation of the legal theories involved. *See, e.g., Johnson v. City of Shelby*, 135 S. Ct. 346, 346-47

(2014) (per curium); *Skinner v. Switzer*, 562 U.S. 521, 530 (2011).; *see also St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 434 (5th Cir. 2000) (stating that a complaint is sufficient if it alleges facts upon which relief can be granted, "even if it fails to categorize correctly the legal theory giving rise to the claim"); *Jacked Up, LLC v. Sara Lee Corp.*, 854 F.3d 797, 810 (5th Cir. 2017) (accord).

Finally, both the Rules and courts have recognized that pleading standards must be measured by the evidence that is available to a plaintiff or counterclaimant, *i.e.*, by relaxing standards when necessary information would be in the possession of the adverse party. *See, e.g.*, *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009); *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 680 (6th Cir. 1988).

## III.    THE COURT SHOULD REVERSE THE DISTRICT COURT'S DISMISSAL OF CLAIMS UNDER CHAPTER 541 OF THE INSURANCE CODE.

As to UBC's first set of claims, regarding violations of Chapter 541 of the Texas Insurance Code, the district court dismissed the claims on a combination of three bases: (1) that Section 541.060(a)(2), (a)(3), and (a)(7) do not apply to adjustors, as a matter of law; (2) that Section 542.060(a)(1) applies only to misrepresentations regarding the details of a policy; and (3) that UBC failed to plead the claims with the

14

requisite level of specificity under Rules 8 and 9.[2] To the contrary, none of the three

grounds required dismissal, as discussed below.

---

[2] As noted in the statement of the case, the claims were filed prior to the effective date of the Texas legislature's recent amendments to the Texas Insurance Code. Therefore, unless otherwise noted, this brief refers exclusively to the statutes in effect at the time the case was filed.

The relevant portions of Section 541.060 are as follows:

> (a) It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to engage in the following unfair settlement practices with respect to a claim by an insured or beneficiary:
>
> > (1) misrepresenting to a claimant a material fact or policy provision relating to coverage at issue;
> >
> > (2) failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of:
> >
> > > (A) a claim with respect to which the insurer's liability has become reasonably clear; or
> > >
> > > (B) a claim under one portion of a policy with respect to which the insurer's liability has become reasonably clear to influence the claimant to settle another claim under another portion of the coverage unless payment under one portion of the coverage constitutes evidence of liability under another portion;
> >
> > (3) failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim;
> > . . .
> >
> > (7) refusing to pay a claim without conducting a reasonable investigation with respect to the claim;

Tex. Ins. Code § 541.060(a) (Lexis Advance 2016).

15

**A.     This Court's precedents and the more thoroughly-reasoned district court opinions demonstrate that insurance adjustors may be liable under Sections 541.060(a)(2), (a)(3), and (a)(7).**

In its amended memorandum and order, the district court followed the so-called *Messersmith* line of cases, to hold that Insurance Code Sections 541.060(a)(2), (a)(3), and (a)(7) cannot apply to adjustors as a matter of law.  *See* ROA.449-51 (citing, *e.g., Messersmith v. Nationwide Mut. Fire Ins. Co.*, 10 F. Supp. 3d 721, 724 (N.D. Tex. 2014) (Solis, J.)).  Contrary to the district court's opinion, the *Messersmith* cases do not represent the majority view.  While it may be true that *Messersmith* cases have been followed by the "majority of federal courts that have addressed" these section, *see* ROA.449—*i.e.* three of the four district courts in Texas—it is equally true that the same courts have also rejected the *Messersmith* cases (or at least criticized them without being required to formally reject them).  Indeed, the *Messersmith* cases do not appear to represent a majority view even in the Northern District, where the cases originated and where they have taken the strongest hold.  *See, e.g., Roach v. Allstate Vehicle & Prop. Ins. Co.,* 3:15-CV-3228-G, 2016 WL 795967, at *4–6 (N.D. Tex. Feb. 29, 2016) (Fish, J.) (collecting cases); *Denley Group, LLC v. Safeco Insurance Company of Indiana*, No. 3:15-CV-1183-B, 2015 WL 5836226, at *3-4 (N.D. Tex. Sept. 30, 2015) (Boyle, J.); *Progressive Island, LLC v. Scottsdale Insurance Company*, No. 3:13-CV-0741-M, 2013 WL 6065414, at *2-3 (N.D. Tex. Nov. 18, 2013) (Lynn, J.); *Lopez-Welch v. State Farm Lloyds*, No. 3:14-CV-2416-L, 2014 WL 5502277, at *8 (N.D. Tex. Oct. 31, 2014) (Lindsay, J.).

In any event, the relative proportions of district cases is of little consequence, since the persuasive value of district court opinions is measured by the weight of their reasoning and not by the weight of their numbers. Fortunately for UBC, the reasoning of the *Messersmith* cases does not reflect Texas law, is inconsistent with this Court's precedent, and has been rejected by the judges that have conducted the most thorough analysis of Section 541.060.

In *Messersmith*, the Court ruled that Sections 541.060(a)(2), (a)(3), and (a)(7) could not apply to adjusters as a matter of law, without referencing this Court's *Gasch* opinion or any Texas cases, and without conducting a thorough analysis of the statutory language or statutory history. *Messersmith*, 10 F. Supp. 3d at 724. Instead, the court simply made a perfunctory determination that adjustors could not be liable for these provisions because an adjustor's "sole role is to assess the damage" . . . despite the fact that courts have long recognized that adjustors also "process[], evaluat[e], approv[e], and den[y] claims." *Compare id.* at 724 *with Vargas v. State Farm Lloyds*, 216 F. Supp. 2d 643, 648 (S.D. Tex. 2002). In turn, the subsequent cases in the line have largely parroted the opinions of *Messersmith*, without further analysis.

By contrast, the Texas Supreme Court and Fifth Circuit have both held that insurance adjusters may be personally liable for violations of section 541.060. *See, e.g., Gasch v. Hartford Acc. & Indem. Co.,* 491 F.3d 278, 282 (5th Cir. 2007); *Liberty Mutual Ins. Co., v. Garrison Contractors, Inc.,* 966 S.W.2d 482, 486 (Tex. 1998)). In particular, this Court's *Gasch* opinion dealt with claims that: (1) the insurer, through its adjuster,

17

denied the plaintiffs' "benefits claim even though [the insurer's] liability was reasonably clear"; and (2) the insurer, through its adjuster, "failed to investigate the claim reasonably, in violation of Texas law." *Id.* at 280. In other words, the claims in *Gasch* mirrored the claims against York under Sections 541.060(a)(2) and 541.060(a)(7), yet the Fifth Circuit held that those types of violations could form a reasonable basis for recovery under Texas law. *Compare id.* at 280 *with* ROA.248-49. Although the bulk of the Fifth Circuit's discussion centered on whether adjusters are "persons" under the Insurance Code, rather than examining the requirements of each statutory section, the implicit determination that claims are viable under these sections was a necessary part of the Court's ruling and therefore constitutes a holding of this Court. *Id.* Thus, the *Gasch* decision should end the inquiry.

In addition, the *Messersmith* cases have been rejected by the more thoroughly-reasoned district-court cases in this circuit. *See, e.g., Roach v. Allstate Vehicle & Prop. Ins. Co.,* 3:15-CV-3228-G, 2016 WL 795967, at *4–6 (N.D. Tex. Feb. 29, 2016) (Fish, J.) (collecting cases). There is no need for a full discussion of the defects in the *Messersmith* analysis as it relates to each separate Insurance Code provision, as one court's analysis of Section 541.060(a)(2) will be sufficient to illustrate the primary problems with the *Messersmith* cases.

In *Roach*, the court first began its analysis with the principles discussed above— that adjustors may be liable for violation of chapter 541 and that "numerous courts have held than an adjustor may be held personally liable for engaging in unfair

18

settlement practices under Section 541.060(a)(2)." *Roach v. Allstate Vehicle & Prop. Ins. Co,* 3:15-CV-3228-G, 2016 WL 795967, at *4–6 (N.D. Tex. Feb. 29, 2016) (Fish, J.) (collecting cases). The court then rejected *Messersmith's* interpretation of Section 541.060(a)(2) as "unduly narrow[ing] the scope of the provision, as it renders the term 'effectuate' superfluous." *Id.* Since the legislature used the word "effectuate instead of "finalize," and since "effectuate" means "to cause to come into being" or "to bring about," the court reasoned that Section 541.060(a)(2) "extends to all persons who play a role in bringing about a prompt, fair, and equitable settlement of a claim." *Id.* (quoting, *e.g., Effectuate,* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 367-68 (10th ed. 1999)). Finally, the court noted that an adjuster, "as the person primarily responsible for investigating and evaluating insurance claims, has the ability to affect or bring about the 'prompt, fair, and equitable settlement' of claims, because it is upon his investigation that the insurance company's settlement of a claim is generally based." *Id.* As such, adjustors may be subject to liability under Texas Insurance Code Section 541.060(a)(2), just as this Court implicitly held in *Gasch* regarding the former statute.

Likewise, this Court was correct in implicitly holding that adjustors may be liable for failure to pay a claim that is reasonably clear (*i.e.* for a violation of Section 541.060(a)(7), and the same logic holds true for Section 541.060(a)(3). *See Gasch v.,* 491 F.3d 278 at 280, 282 (remanding based on claims that the adjustor denied the plaintiffs' "benefits claim even though [the insurer's] liability was reasonably clear").

19

Furthermore, even *Messersmith* concedes that these Insurance Code provisions allow claims against the insurance company's decision makers, *e.g.,* the "individual at the insurance company who refuses to pay the claim." *Messersmith,* 10 F. Supp. 3d at 724. In turn, the courts of this Circuit have long recognized that adjustors can be, and often are, assigned the authority or responsibility for "approving, and denying claims." *See, e.g., Roach*, 2016 WL 795967, at *6 (quoting *Vargas v. State Farm Lloyds*, 216 F. Supp. 2d 643, 648 (S.D. Tex. 2002)) (noting that the adjuster "engages in the business of insurance by investigating, processing, evaluating, approving, and denying claims"). Therefore, the district court erred in holding that these sections could not apply to adjustors as a matter of law.

**B.    The plain language of Section 541.060(a)(1) demonstrates that it is not limited to representations about policy terms.**

The district court also followed *Messersmith* with regard to its analysis of Section 541.060(a)(1). Although there is no dispute that Section 541.060(a)(1) applies to misrepresentations by adjustors, the district court followed *Messersmith* in holding that this section is limited to misrepresentations "about the details of a policy, not the facts giving rise to a claim for coverage." ROA.451 (quoting, *e.g.*, *Messersmith*, 10 F. Supp. 3d at 724). However, the district court did not discuss *Messersmith's* reasoning, which will not hold up to scrutiny.

In *Messersmith,,* the court based its limited reading of Section 541.060(a)(1) on a single statement from this Court's *Confederate Air Force* opinion, and the cases upon

20

which it relied. *Messersmith* 10 F. Supp. 3d at 724 (citing *United States Fire Ins. Co. v. Confederate Air Force,* 16 F.3d 88, 91 (5th Cir. 1994)). However, none of those cases involved an adjuster's post-loss misrepresentation about material facts related to coverage on a particular law. *See Kel Lee Props. v. Evanston Ins. Co.,* No. 2:17-CV-292, *2018* WL 286758, at *4 (S.D. Tex. 2018). "Rather, all three cases were about whether the carrier or sales agent misrepresented policy limits, coverage, or other policy terms," and the Fifth Circuit's statement was limited to the proof needed to find liability in that context:

> In order to find misrepresentation **in the instant case**, the jury would have had to find either that U.S. Fire represented that CAF would receive a particular kind of policy that it did not receive or that it denied coverage against loss under specific circumstances that it previously had represented would be covered.

*Id.* (quoting *Confederate Air Force,* 16 F.3d at 91) (emphases added). Thus, these cases "did not purport to determine the entire contour" of Section 541.060(a)(1), and they do nothing to exclude liability for post-loss misrepresentations of material fact. *See id..*

To the contrary, the plain language of Sections 541.060(a)(1) demonstrates that it is broader than the interpretation adopted by *Messersmith* and the district court. Unlike other statutes regarding misrepresentations (such as Section 541.061), Section 541.060(a)(1) applies specifically to the claims-settlement context, meaning the statute's focus is on post-claim representations that might impact settlement.

More importantly, the language of Section 541.060(a) is not limited to representations about "a policy provision," but expressly includes representations about "**a material fact or** policy provision relating to coverage at issue." Tex. Ins. Code Ann. § 541.060(a)(1) (2016) (emphasis added). As such, *Messersmith's* reading renders meaningless the phrase "a material fact or," and it fails to effectuate the statute's purpose. Accordingly, the Court erred in holding that Section 541.060(a)(1) is limited to representations regarding policy terms.

### C.    UBC pled sufficient claims under these sections.

Having determined the scope of claims available under the cited Insurance Code sections, the only remaining issue is whether UBC has stated a claim for relief under those sections. On that issue, the question is not (as the district court appeared to believe) whether UBC's amended complaint pinned specific facts from the "facts" section to each particular legal theory in the "claims" section. *See* ROA.447-48 (discussing district court's approach to pleading standards). Rather, the question— and the only question—is whether the allegations "as a whole" state a plausible claim for relief. *See, e.g., E.g., Matrixx Initiatives, Inc. v. Siracusano,* 563 U.S. 27, 47 (2011); *Gulf Coast Hotel-Motel Ass'n v. Miss. Gulf Coast Golf Course Ass'n*, 658 F.3d 500, 506 (5th Cir. 2011).

Here, there is no doubt that UBC made abundant factual allegations, as opposed to mere labels and conclusions. The fact section alone included thirty-three paragraphs—including names, dates, forms of communications, and quotes—which

22

go well beyond the requirements of Rule 8. ROA.238-43. However, the Court need not consider all of those factual allegations to confirm that sufficient claims have been stated; rather, a handful of allegations will suffice.

In paragraph , UBC quotes York as saying (through its representative, Forman) that it would "quickly" address anything "unexpected" in connection with the "time-and-materials" that York had chosen to pursue. *See* ROA.240 at ¶21. Yet, the allegations indicate that York never identified anything "unexpected" as the costs grew to almost $600,000 more than the original, fixed bid. *See, e.g.,* ROA.240-42 at ¶¶ 21, 23, 27, 34. As such, the allegations indicate that York always "expected" the costs of repair to exceed the policy limits, meaning that the policy limits should have been paid on the original fixed bid. Therefore, York's shift to a time-and-materials bid (without the informed consent of UBC), did not effectuate a prompt, fair, and equitable settlement—it did just the opposite. *See* Tex. Ins. Code § 541.060(a)(2) (2016). Or at least a reasonable jury could so infer, and all inferences must be construed in favor of UBC. *See, e.g., Severance v. Patterson,* 566 F.3d 490, 501 (5th Cir. 2009). As a result, UBC lost the benefit of the bargain from the roofer's fixed bid, which would have resulted in only $35,000 in out-of-pocket costs for UBC), and instead incurred almost $600,000 in "extras."

Moreover, the failure to effectuate a reasonable settlement did not end with the decision to move to a time-and-materials arrangement without UBC's informed consent. When informing UBC of the new arrangement, in February 2017, York did

23

not inform UBC of its apparent "expectations" that costs would exceed the fixed bid, but instead made representations (discussed below regarding Section 541.060(a)(1) that would have led a reasonable person to believe that York was either going to contain costs or that overruns would be "indemnified once incurred." *See, e.g.,* ROA.240-42 at ¶¶ 21-22, 27, 34. By, failing to effectuate settlement at that point, York not only caused UBC to lose the benefit of the bargain from the original, fixed bid, but also to lose the chance to mitigate damages by refusing or re-bidding the work. ROA.242 ¶ 31. As such, USB has pled a claim under section 541.060(a)(2) for this additional reason.

For equivalent reasons, UBC has also pled sufficient claims under Sections 541.060(a)(3) and 541.060(a)(7). Indeed, that is true even under the reasoning of the *Messersmith* cases, as the *Messersmith* court acknowledge that these sections would apply to the persons that actually made decisions for the insurer, *e.g.,* the "individual at the insurance company who refuses to pay the claim." *Messersmith,* 10 F. Supp. 3d at 724. Here, the allegations—which indicate that York was the sole point of contact, was the party that chose to shift to time-and-materials billing, etc.—create an inference that York was not merely the investigator, but was the party that actually made decisions regarding payment, explanations, etc. While York can, of course, attempt to rebut that inference by producing evidence at a later date, all inferences must be drawn in favor of the UBC on this motion. *See, e.g., Severance v. Patterson,* 566 F.3d 490, 501 (5th

24

Cir. 2009). As such, UBC has not only pled a claim for relief under Section 541.060(a)(2), but also under Sections 541.060(a)(3) and (a)(7) as well.

Finally, UBC has also pled sufficient claims under Section 541.060(a)(1), and it has done so even under the standards of Rule 9(b). Early in the process, York represented that it would reach agreement on the scope of work, which would lead a reasonable person to believe that York would at least obtain informed consent of UBC before instructing UBC's roofer to, for instance, bill on a time-and-materials manner. *See, e.g.,* ROA.239 at ¶ 14. Instead, York agreed with UBC's roofer on a time-and-material process without informing of UBC of any "expected" increase in costs, or even the risk thereof. *See* ROA.240, 242, 244 at ¶¶ 19, 31, 46. To the contrary, given that the roofer had already provided a fixed bid for slightly more than the policy limits, a reasonable personal would have believe that the York expected the time-and-materials process to be cheaper than the fixed bid of only $285,798.00. Yet the allegations indicate that was false, as discussed above, since York never identified anything "unexpected" in the charges that ultimately **tripled** the fixed bid. *See, e.g.,* ROA.240-42 at ¶¶ 16, 21, 23, 27, 32, 34. Even if the shift to a time-and-materials process was not an actionable misrepresentation by itself, it would at least have created a duty to inform UBC of the risks involved in the shift, *i.e.* that a tripling of costs would not be "unexpected" to York. *See generally Access Mediquip, L.L. C. v United Healthcare Insurance, Co.,* 662 F3d 376, 382 (5th Cir. 2011), *withdrawn then reinstated at* 698 F3d 229 (5th Cir. 2012), *cert denied* 133 S. Ct. 1467 (2013) (construing Texas law

25

as Texas law as "permit[ting] a party alleging an actionable misrepresentation to attempt to prove that it was reasonably misled by a true but crucially incomplete statement that conveyed a false impression of the speaker's intentions"). Finally, when York informed UBC of the time-and-materials process, it simultaneously implied that it would be keeping costs down by requiring bi-daily reports and that overruns would be indemnified under the policy. ROA.240 at ¶¶ 21-22. Indeed, this last representation is a misrepresentation regarding the scope of coverage under the policy, which would be actionable even under the *Messersmith* cases.

In short, UBC has alleged that York's representations—combined with rejection of a fixed bid in favor of an open-ended time-and-materials process— created justifiable reliance that York would either keep costs to the fixed-bid levels or that any overruns would be indemnified. UBC relied on the representation to its detriment, not only losing the benefit of the bargain on its roofer's fixed bid, but also losing the opportunity to mitigate damages by refusing or re-bidding the work. As such, UBC has pled sufficient claims under Chapter 541 of the Insurance Code.

## IV. THE COURT SHOULD REVERSE THE DISTRICT COURT'S DISMISSAL OF CLAIMS UNDER THE DECEPTIVE TRADE PRACTICES ACT.

### A. Rule 9(b) does not apply to all sections of the DTPA.

In addition to claims under the Texas Insurance Code, UBC also asserted overlapping claims under the Texas DTPA. In evaluating these claims, the district court erroneously adopted a blanket principle that Rule 9(b) applies to all DTPA

26

claims. To the contrary, Rule 9(b) applies, at most, to DTPA claims based on fraudulent misrepresentations.

UBC assumes for the sake of argument that Rule 9(b) may apply to DTPA claims that have an element of fraud. However, it does not apply to claims that are based on other types of acts and omissions, such as claims under Texas Business & Commerce Code Section 17.50—which imposes derivative liability for violations of the Insurance Code—at least not where liability derives from non-fraud section such sections 541.060(a)(2), (a)(3), and (a)(7). *See, e.g., Khan v. Allstate Fire and Cas. Ins. Co.*, NO. CIV.A. H-11-2693, 2012 WL 1601302, *4, *6-9 (S.D. Tex. May 07, 2012). This point is confirmed by this Court's own standards for Rule 9(b), which apply to allegations about representations: "Rule 9(b) requires allegations of the particulars of time, place, and contents of the *false representations*, as well as the identity of the person making the *misrepresentation* and what he obtained thereby." *See, e.g., Benchmark Elec., Inc. v. J.M Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003), *modified on other grounds*, 355 F.3d 356 (5th Cir. 2003) (emphasis added). Accordingly, Rule 9(b) does not apply to claims under Section 17.50, at least not where those claims derive from Insurance Code Section 541.060(a)(2), (a)(3), and (a)(7).

## B.    UBC has sufficiently pled a claim under the DTPA.

UBC asserted claims against York under three sections of the Texas Business & Commerce Code: (1) Section 17.46(b)(7); (2) Section 17.46(b)(12); and (3) Section 17.50(a)(4). Upon further review, UBC has determined not to pursue claims on the

27

first two theories, in the interests of efficiency, as any relief under those theories should also be afforded by Section 17.50 in this instance.

The district court erred in dismissing claims under Section 17.50(a)(4), however, for the reasons already discussed above. As set forth in Section II(A) and (C) above, UBC has sufficiently stated claims under Section 540.060(a)(2), (a)(3), and (a)(7). Likewise, UBC has stated a claim Section 540.060(a)(1), as set forth in Section II(B) and (C) above. Therefore, by definition, UBC has also stated a claim under Section 17.50(a)(4) and is entitled to any additional relief provided by the DTPA.[3]

## V.   THE COURT SHOULD REVERSE THE DISTRICT COURT'S DISMISSAL OF CLAIMS FOR PROMISSORY ESTOPPEL.

Finally, its third claim for relief, UBC alleged an alternative claim for promissory estoppel. In evaluating the claim, the district court correctly acknowledged that promissory estoppel is not only a defensive theory but can also support an affirmative claim for relief. *See* ROA.454. Likewise, the court correctly

---

[3] The relevant portion of section 17.50 is as follows:

> (a) A consumer may maintain an action where any of the following constitute a producing cause of economic damages or damages for mental anguish:
>      . . .
>
>      (4) the use or employment by any person of an act or practice in violation of  Chapter 541, Insurance Code.

Tex. Bus. & Com. Code Ann. § 17.50(a)(4) (Lexis Advance 2017))

cited the elements of a promissory-estoppel claim. ROA.454 (citing, e.g., *English v Fischer,* 660 S. W2d 521, 524 (Tex. 1983)).

Nevertheless, the district court erroneously dismissed the claim, based on a much-too-narrow reading of the allegations. More specifically, the court construed the complaint as: (1) alleging only one promise, which the court found too "vague and indefinite" to support promissory estoppel; and (2) failing to allege factual underpinnings other elements of promissory estoppel. The court rejected UBC's argument that it should consider other, cited allegations of the complaint, since "amended complaint does not point to any of these statements as promises supporting its promissory estoppel claim against York," and "[e]ven if it did, plaintiff has not alleged that it relied on those statements to its detriment, nor that such reliance was foreseeable by defendant." ROA.456-57.

In other words, it appears the district court believed that the complaint's factual allegations could only be considered on the promissory estoppel theory if the complaint expressly tied each specific allegation to the complaint's discussion of that legal theory. However, that is not the standard applied by the precedents of this Court and the United States Supreme Court.

Contrary to the district court's apparent reasoning, a complaint need not tie specific allegations to specific theories. Instead, a complaint is sufficient so long as it alleges facts upon which relief can be granted, "even if it fails to categorize correctly the legal theory giving rise to the claim." *E.g., St. Paul Mercury Ins. Co. v. Williamson,*

224 F.3d 425, 434 (5th Cir. 2000); *Jacked Up, LLC v. Sara Lee Corp.*, 854 F.3d 797, 810 (5th Cir. 2017) (accord).  Indeed, a complaint need not allege a legal theory at all, much less "pin plaintiff's claim for relief to a precise legal theory." *See Johnson v. City of Shelby*, 135 S. Ct. 346, 346-47 (2014) (per curium); *Skinner v. Switzer*, 562 U.S. 521, 530 (2011).   Rather, the allegations must be read "as a whole." *E.g., Matrixx Initiatives, Inc. v. Siracusano,* 563 U.S. 27, 47 (2011); *Gulf Coast Hotel-Motel Ass'n v. Miss. Gulf Coast Golf Course Ass'n*, 658 F.3d 500, 506 (5th Cir. 2011).

Reading the allegations as a whole, they are more than sufficient to raise a plausible claim of promissory estoppel.   First, the allegations are not limited to a single promise, but many, as discussed above: *e.g.,* to "develop an agreed scope" with regard to the code upgrade"; that "code upgrade costs are indemnified once incurred"; that "insurance will provide the funds for work required by the engineer"; etc.  ROA.239-41 at ¶ 14, 20-22, 25.  Moreover, these statements, which might not be specific-enough promises in a vacuum, must be considered in the context of the entire transaction—in which York rejected payment on a fixed bid for just above the policy limits, and instead instructed the roofer to proceed on a variable time-and-materials basis.  The nature of these promises is further confirmed by representations that York would require bi-daily statements to "quickly" address anything "unexpected" and that UBC would be "indemnified" for costs under the time-and-materials approach. ROA.240 at ¶¶ 22. Moreover, the complaint allege that UBC relied on these promises—plural—to its detriment. *See, e.g.,* ROA.242, 250 at ¶ 31, 93-95.

30

In short, UBC has alleged that York's representations—combined with rejection of a fixed bid in favor of an open-ended time-and-materials process—created justifiable reliance that York would either keep costs to the fixed-bid levels or that any overruns would be indemnified.  As such, the allegations are sufficient to create a plausible claim for promissory estoppel.

## VI.    <u>CONCLUSION</u>

The district court erred in dismissing the claims against York Risk Services Group Incorporated under Texas Insurance Code Section 541.060, the Texas DTPA, and principles of promissory estoppel.  As such, this Court should reverse the district court's judgment and remand this action to have these claims included in a trial on the merits.

Respectfully submitted,

/s/ William D. Taylor
William D. Taylor (TX 24046954)
Taylor & Taylor Law, P.C.
4115 Highgrove Dr.
Arlington, TX 76001
817.483.8388
Fax: 817.483.8390
Email: wtaylor@taylorandtaylorlaw.com
Counsel for Appellant

31

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing brief was served on Robert Michael Rosen and Ryan Starbird via the Court's electronic filing system on September 5, 2018.

/s/ William D. Taylor

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 7,307 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type and style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in fourteen (14) point "Garamond" font.

/s/ William D. Taylor