**No. 18-10713**

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

UNIVERSITY BAPTIST CHURCH OF FORT WORTH,

*Plaintiff-Appellant.*

v.

YORK RISK SERVICES GROUP INCORPORATED,

*Defendant-Appellee.*

---

On appeal from the United States District Court
for the Northern District of Texas
Case No. 4:17-CV-962-A, Judge John H. McBryde

---

**APPELLANT'S RECORD EXCERPTS**

---

William D. Taylor (TX 24046954)
Taylor & Taylor Law, P.C.
4115 Highgrove Dr.
Arlington, TX 76001
817.483.8388
Fax: 817.483.8390
Email: wtaylor@taylorandtaylorlaw.com
*Counsel for Appellant*

## TABLE OF CONTENTS

| **Tab** | **Document** | **Record Citation** |
|---|---|---|
| 1. | Docket sheet | ROA.1-6 |
| 2. | Appellant's amended complaint | ROA.237-52 |
| 3. | Memorandum opinion and order dismissing York | ROA.422-37 |
| 4. | Final judgment as to York | ROA.438 |
| 5. | Amended memorandum opinion and order dismissing York | ROA.439-57 |
| 6. | Notice of Appeal | ROA.458-59 |

/s/ William D. Taylor
William D. Taylor (TX 24046954)
Taylor & Taylor Law, P.C.
4115 Highgrove Dr.
Arlington, TX 76001
817.483.8388
Fax: 817.483.8390
Email: wtaylor@taylorandtaylorlaw.com
*Counsel for Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that these record excerpts were served on Robert Michael Rosen and Ryan Starbird via the Court's electronic filing system on September 5, 2018.

/s/ William D. Taylor

TAB 1

# U.S. District Court
# Northern District of Texas (Fort Worth)
# CIVIL DOCKET FOR CASE #: 4:17-cv-00962-A

University Baptist Church v. Lexington Ins Co, et al
Assigned to: Judge John McBryde
Case in other court:   United States Court of Appeals Fifth Circuit,
                18-10713

                352nd Judicial District Tarrant Co TX,
                352-294404-17

Cause: 28:1332 Diversity-Contract Dispute

Date Filed: 12/04/2017
Jury Demand: Defendant
Nature of Suit: 110 Contract: Insurance
Jurisdiction: Diversity

**Plaintiff**

**University Baptist Church of Fort Worth**      represented by    **Timothy M Hoch**
Hoch Law Firm PC
5616 Malvey Avenue
Fort Worth, TX 76107
817/999-5961
Fax: 817/731-9706
Email: tim@hochlawfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

V.

**Defendant**

**Lexington Insurance Company**      represented by    **Brett A Wallingford**
Zelle LLP
901 Main Street
Suite 4000
Dallas, TX 75202
214-742-3000
Fax: 214-760-8994
Email: bwalling@zelle.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Walter W Cardwell , IV**
Zelle LLP
901 Main Street
Suite 4000
Dallas, TX 75202
214-742-3000
Fax: 214-760-8994
Email: wcardwell@zelle.com
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Defendant**

**Kevin Forman**
*TERMINATED: 01/25/2018*

represented by **Robert M Rosen**
Parsons McEntire McCleary & Clark PLLC
1700 Pacific Avenue
Suite 4400
Dallas, TX 75201
214-237-4343
Fax: 214-237-4340
Email: rrosen@pmmclaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**David A Walton**
Bell Nunnally & Martin LLP
3232 McKinney Ave.
Suite 1400
Dallas, TX 75204
214-740-1445
Fax: 214-740-5745
Email: dwalton@bellnunnally.com
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Ryan Davis Starbird**
Parsons McEntire McCleary & Clark PLLC
1700 Pacific Avenue
Suite 4400
Dallas, TX 75201
214-237-4315
Fax: 214-237-4340
Email: rstarbird@pmmclaw.com
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Defendant**

**York Risk Services Group Inc**
*TERMINATED: 05/16/2018*

represented by **Robert M Rosen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**David A Walton**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Ryan Davis Starbird**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/04/2017 | 1 (p.7) | NOTICE OF REMOVAL from 352nd Judicial District Court of Tarrant County, TX, case number 352-294404-17 filed by LEXINGTON INSURANCE COMPANY. (Filing fee $400; receipt number 0539-8839618) In each Notice of Electronic Filing, the judge assignment is indicated, and a link to the Judges Copy Requirements is provided. The court reminds the filer that any required copy of this and future documents must be delivered to the judge, in the manner prescribed, within three business days of filing. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms and Instructions found at www.txnd.uscourts.gov, or by clicking here: Attorney Information - Bar Membership. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge. (Attachments: # 1 (p.7) Exhibit(s) A - Index of Exhibits Filed with Notice, # 2 (p.69) Exhibit(s) B - State Court Docket Sheet, # 3 (p.71) Exhibit(s) C - Index of Docs Filed in State Court, # 4 (p.74) Exhibit(s) C-1 - P's Original Petition, # 5 (p.76) Exhibit(s) C-2 - P's 1st Am. Petition, # 6 (p.129) Exhibit(s) C-3 - Ltr. to Crt. for Svc., # 7 (p.132) Exhibit(s) C-4 - Officer's Return for Lexington, # 8 (p.142) Exhibit(s) C-5 - Officer's Return for York Risk Svcs., # 9 (p.156) Exhibit(s) C-6 - Officer's Return for Forman, # 10 (p.163) Cover Sheet, # 11 (p.167) Cover Sheet Supplement) (Wallingford, Brett) (Entered: 12/04/2017) |
| 12/04/2017 | 2 (p.69) | New Case Notes: A filing fee has been paid. File to Judge McBryde. Pursuant to Misc. Order 6, Plaintiff is provided the Notice of Right to Consent to Proceed Before A U.S. Magistrate Judge. Clerk to provide copy to plaintiff if not received electronically. (wrb) (Entered: 12/04/2017) |
| 12/04/2017 | 3 (p.71) | Standing ORDER Concerning Paper Filing in Cases Assigned to District Judge John McBryde...see order for specifics. (Ordered by Judge John McBryde on 12/4/2017) (wrb) (Entered: 12/04/2017) |
| 12/04/2017 | 5 (p.76) | Received Original/Judge's Copy pursuant to Standing Order re: 1 (p.7) Notice of Removal filed by Lexington Insurance Company (wrb) (Entered: 12/05/2017) |
| 12/04/2017 | 6 (p.129) | CERTIFICATE OF INTERESTED PERSONS/DISCLOSURE STATEMENT by Lexington Insurance Company. (wrb) (Entered: 12/05/2017) |
| 12/05/2017 | 4 (p.74) | NOTICE of Consent to Lexington Insurance Company's Notice of Removal filed by York Risk Services Inc (wrb) (Entered: 12/05/2017) |
| 12/08/2017 | 7 (p.132) | ANSWER to Complaint filed by Lexington Insurance Company. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms and Instructions found at www.txnd.uscourts.gov, or by clicking here: Attorney Information - Bar Membership. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge. (npk) (Entered: 12/08/2017) |
| 12/11/2017 | 8 (p.142) | ANSWER to First Amended Petition, with Jury Demand filed by Kevin Forman, York Risk Services Inc. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms and Instructions found at www.txnd.uscourts.gov, or by clicking here: Attorney Information - Bar Membership. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge. (mpw) (Entered: 12/11/2017) |

| 12/14/2017 | 9 (p.156) | Plaintiff's MOTION to Remand, Motion for Sanctions and Brief in Support filed by University Baptist Church (wrb) (Entered: 12/14/2017) |
|---|---|---|
| 12/14/2017 | 10 (p.163) | CERTIFICATE OF INTERESTED PERSONS/DISCLOSURE STATEMENT by University Baptist Church. (wrb) (Entered: 12/14/2017) |
| 12/15/2017 | 11 (p.167) | CERTIFICATE OF INTERESTED PERSONS by Kevin Forman, York Risk Services Inc. (wrb) (Entered: 12/15/2017) |
| 01/04/2018 | 12 (p.170) | RESPONSE filed by Kevin Forman, York Risk Services Inc to Plaintiff's 9 (p.156) MOTION to Remand and brief in support (wrb) (Entered: 01/04/2018) |
| 01/04/2018 | 13 (p.183) | RESPONSE and brief in opposition filed by Lexington Insurance Company to Plaintiff's 9 (p.156) MOTION to Remand and Motion for Sanctions (wrb) (Entered: 01/04/2018) |
| 01/04/2018 | 14 (p.207) | Appendix in Support filed by Lexington Insurance Company of his 13 (p.183) Response and brief in opposition to Plaintiff's Motion to Remand and Motion for Sanctions (wrb) (Entered: 01/04/2018) |
| 01/08/2018 | 15 (p.218) | Plaintiff's Consolidated REPLY filed by University Baptist Church to Defendants' Response to Plaintiff's 9 (p.156) MOTION to Remand (wrb) (Entered: 01/08/2018) |
| 01/25/2018 | 16 (p.222) | ORDER: Amended Pleadings due by 2/8/2018. Responses due by 2/22/2018. (Ordered by Judge John McBryde on 1/25/2018) (bdb) (Entered: 01/25/2018) |
| 01/25/2018 | 17 (p.224) | MEMORANDUM OPINION and ORDER denying 9 (p.156) Motion to Remand filed by University Baptist Church: The court further ORDERS that from this point forward Lexington and York are the only defendants in this action and that the action shall be styled as "University Baptist Church v. Lexington Insurance Company and York Risk Services Inc." (Ordered by Judge John McBryde on 1/25/2018) (bdb) (Entered: 01/25/2018) |
| 01/25/2018 | 18 (p.236) | FINAL JUDGMENT AS TO CERTAIN PARTY: The court ORDERS, ADJUDGES, and DECREES that all claims and causes of action asserted by plaintiff, University Baptist Church, against defendant Kevin Forman be, and are hereby, dismissed without prejudice. (Ordered by Judge John McBryde on 1/25/2018) (bdb) (Entered: 01/25/2018) |
| 02/08/2018 | 19 (p.237) | Plaintiff's AMENDED COMPLAINT WITH JURY DEMAND against Lexington Insurance Company, York Risk Services Group Inc filed by University Baptist Church of Fort Worth. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms, instructions, and exemption information may be found at www.txnd.uscourts.gov, or by clicking here: Attorney Information - Bar Membership. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge. (wrb) (Entered: 02/08/2018) |
| 02/22/2018 | 20 (p.253) | Defendant's ORIGINAL ANSWER AND DEFENSES to Plaintiff's 19 (p.237) Amended Complaint filed by Lexington Insurance Company. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms, instructions, and exemption information may be found at www.txnd.uscourts.gov, or by clicking here: Attorney Information - Bar Membership. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge. (wrb) (Entered: 02/22/2018) |

| 02/22/2018 | 21 (p.269) | MOTION to Dismiss Plaintiff's Amended Complaint and brief in support thereof filed by York Risk Services Group Inc (wrb) (Entered: 02/22/2018) |
|---|---|---|
| 02/22/2018 | 22 (p.292) | STATUS REPORT ORDER: Joint Status Report due by 3/26/2018 by 4pm. (Ordered by Judge John McBryde on 2/22/2018) (wrb) (Entered: 02/22/2018) |
| 03/14/2018 | 23 (p.303) | RESPONSE filed by University Baptist Church of Fort Worth re: 21 (p.269) MOTION to Dismiss. (mpw) (Entered: 03/14/2018) |
| 03/26/2018 | 24 (p.315) | JOINT STATUS REPORT filed by Lexington Insurance Company, University Baptist Church of Fort Worth, York Risk Services Group Inc. (wrb) (Entered: 03/27/2018) |
| 03/27/2018 | 25 (p.324) | SCHEDULING ORDER: Amended Pleadings due by 8/15/2018. Discovery due by 10/15/2018. Pretrial Conference set for 11/5/2018 10:30 AM before Judge John McBryde. Joinder of Parties due by 6/21/2018. Jury Trial set for 12/10/2018 09:00 AM before Judge John McBryde. (Ordered by Judge John McBryde on 3/27/2018) (wrb) Modified on 3/28/2018 (wrb). (Entered: 03/27/2018) |
| 03/28/2018 | 26 (p.334) | REPLY filed by York Risk Services Group Inc re: 21 (p.269) MOTION to Dismiss. (bdb) (Entered: 03/28/2018) |
| 04/10/2018 | 27 (p.346) | Plaintiff's Rule 26(a)(1) Initial Disclosures filed by University Baptist Church of Fort Worth. (wrb) (Entered: 04/10/2018) |
| 04/23/2018 | 28 (p.352) | Plaintiff's MOTION for Leave to File Supplemental Authority filed by University Baptist Church of Fort Worth (wrb) (Entered: 04/23/2018) |
| 05/01/2018 | 29 (p.421) | ORDER granting 28 (p.352) Motion for Leave to file supplemental authority....the court will consider the additional authority plaintiff has cited in evaluating the merits of the motion of deft York Risk Services to dismiss. (Ordered by Judge John McBryde on 5/1/2018) (wrb) (Entered: 05/01/2018) |
| 05/16/2018 | 30 (p.422) | Memorandum Opinion and Order...Motion of York granted; pltfs claims against York dismissed. From this point forward, the style shall read "University Baptist Church of Fort Worth, Plaintiff vs. Lexington Insurance Company, Defendant". Court directs entry of final judgment as to the dismissal of Plaintiff's claims against York. (Ordered by Judge John McBryde on 5/16/2018) (wrb) (Entered: 05/16/2018) |
| 05/16/2018 | 31 (p.438) | FINAL JUDGMENT AS TO CERTAIN PARTY...All claims by University Baptist Church against York Risk Services Group are dismissed w/prej. York Risk Services Group Inc terminated. (Ordered by Judge John McBryde on 5/16/2018) (wrb) (Entered: 05/16/2018) |
| 05/23/2018 | 32 (p.439) | Amended Memorandum Opinion and Order..the motion of York granted, pltf's claims against York dismissed. The only deft in this action is Lexington Insurance Company. (Ordered by Judge John McBryde on 5/23/2018) (wrb) (Entered: 05/23/2018) |
| 06/14/2018 | 33 (p.458) | NOTICE OF INTERLOCUTORY APPEAL as to 32 (p.439) Memorandum Opinion and Order, 30 (p.422) Memorandum Opinion and Order, 31 (p.438) Order, Add and Terminate Parties to the Fifth Circuit. Filing fee $505, receipt number FW030840. T.O. form to appellant electronically at Transcript Order Form or US Mail as appropriate. Copy of NOA to be sent US Mail to parties not electronically noticed. IMPORTANT ACTION REQUIRED: Provide an electronic copy of any exhibit you offered during a hearing or trial that was admitted into evidence to the clerk of the district court within 14 days of the date of this notice. Copies must be transmitted as |

| | | |
|---|---|---|
| | | PDF attachments through ECF by all ECF Users or delivered to the clerk on a CD by all non-ECF Users. See detailed instructions here. (Exception: This requirement does not apply to a pro se prisoner litigant.) Please note that if original exhibits are in your possession, you must maintain them through final disposition of the case. (tle) (Entered: 06/14/2018) |
| 06/15/2018 | | Confirmation of receipt of payment from Hoch Law Firm P.C. in the amount of $505.00. Transaction posted on 6/14/2018. Receipt number FW030840 processed by wc. (ali) Lifted restriction on 6/15/2018 (ali). (Entered: 06/15/2018) |
| 06/21/2018 | | USCA Case Number 18-10713 in United States Court of Appeals Fifth Circuit for 33 (p.458) Notice of Appeal. (tle) (Entered: 06/21/2018) |
| 06/21/2018 | 34 (p.460) | Transcript Order Form: re 33 (p.458) Notice of Appeal, transcript not requested Reminder to appellant: this document must also be filed with the appeals court. (tle) (Entered: 06/21/2018) |

TAB 2

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| UNIVERSITY BAPTIST CHURCH OF FORT WORTH, | § § § | |
| Plaintiff, | § § § | |
| v. | § § | CAUSE NO.  4:17-CV-962-A |
| LEXINGTON INSURANCE COMPANY, and YORK RISK SERVICES GROUP, INC. | § § § § | |
| Defendants. | § § | |

## PLAINTIFF'S AMENDED COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW, PLAINTIFF UNIVERSITY BAPTIST CHURCH OF FORT WORTH

("Plaintiff") complaining of Defendants Lexington Insurance Company and York Risk Services

Group, Inc. and would show the Court and Jury the following:

### I.

### PARTIES

1.      UNIVERSITY BAPTIST CHURCH OF FORT WORTH ("Plaintiff") is a Texas

Non-Profit Corporation. Plaintiff is the owner of a church located at 2720 Wabash Avenue, Fort

Worth, Texas 76109.

2.      LEXINGTON INSURANCE COMPANY ("Lexington") is a Massachusetts

insurance company licensed to write property and casualty insurance in the State of Texas by the

Texas Department of Insurance.  This Defendant has appeared herein and may be served through

its attorney in this case.

1

18-10713.237

3.    YORK RISK SERVICES GROUP, INC. ("York") is a New York corporation licensed to do business as a Third Party Administrator by the Texas Department of Insurance. This Defendant has appeared herein and may be served through its attorney in this case.

## II.

## JURISDICTION AND VENUE

4.    This case was removed from state court on the basis of diversity jurisdiction, 28 U.S.C. 1332(a). Venue is proper because the Property made the subject of the suit is located in Tarrant County, Texas.

## III.

## FACTS

5.    Plaintiff is the owner of a church located at 2720 Wabash Avenue, Fort Worth, Texas 76109 (the "Property").

6.    The Property was insured by Defendant Lexington under a Commercial Lines Policy (the "Policy") which was in effect during all periods relevant hereto.

7.    On March 17, 2016, the Property was hit by a large hailstorm during which the Property sustained heavy roof and structural damage. After Plaintiff discovered the hail, wind, and storm damage, Plaintiff notified Defendant Lexington's agent about this loss on March 21, 2016.

8.    Defendant Lexington failed to commence an investigation of the claim until April 7, 2016, which was more than five days after notice of the claim. Defendant Lexington hired Defendant York to adjust the loss. Defendant York, in turn, assigned its employee Kevin Forman ("Forman") to examine the Property and adjust the loss.

2

18-10713.238

9.    Defendant Lexington did not request any items, statements, or forms until September 14, 2016, when it sent an undisputed "Proof of Loss" for Plaintiff to sign. Defendant Lexington failed to notify Plaintiff in writing of the acceptance or rejection of the claim before the 15th day after Defendant Lexington received the Proof of Loss.

10.    On November 1, 2016, Defendant Lexington issued a partial payment to Plaintiff in the amount of $157,000.00. This check was for far less than the undisputed amount that Defendant Lexington had already agreed to pay.

11.    The "approved Proof of Loss and agreed scope and costs" for the replacement of the roof in the amount of $586,040.20.

12.    In this same e-mail, Forman noted that "code items have been raised and this is being investigated." The code and ordinance endorsement under the Policy had a sublimit of $250,000.00.

13.    In September 2016, Forman hired Unified Building Sciences, Inc. to inspect the roof and address the code upgrade issues. Unified Building Sciences retained Thomas Shingler, P.E. to assist in this analysis.

14.    On September 26, 2016, Forman informed Plaintiff by e-mail that an engineer was being retained. In this same e-mail Forman advised Plaintiff: "When you receive a copy of the engineering report and related invoice from Jeff Eubank Roofing, please forward me a copy for review *so we can develop an agreed scope* for the additional decking required." (Emphasis added.)

15.    On November 18, 2016, Shingler submitted his report ("Shingler report") to Jeff Eubank Roofing which, on that same date, provided the report to Forman.

16.    By e-mail dated November 23, 2016, Jeff Eubank Roofing submitted to Forman a code upgrade bid of $285,798.00.

3

18-10713.239

17.     On December 8, 2016, Forman provided the Shingler Report to Plaintiff.

18.     In early December 2016, Forman asked Jeff Eubank Roofing for a "detailed breakdown of your proposal." Jeff Eubank Roofing provided a revised proposal on December 27, 2016, but "stopped when the price was more than what we had already issued."

19.     In early January of 2017, Forman decided to take a different approach to the code upgrade issue. Forman met with Jeff Eubank Roofing and confirmed by e-mail "that we agreed to measure the cost of re-decking the main chapel by time and material due to the uniqueness of the project."

20.     Once it was agreed between Defendant York and Jeff Eubank Roofing that the re-decking of the roof would proceed on a "time and materials" basis, Forman sent an e-mail on January 27, 2017, to Jeff Eubank Roofing with forms that were to be submitted. As part of this e-mail, Forman requested that the forms be sent "within two days of the date of activity so we can make sure there are no concerns or misunderstandings as the project moves forward." Forman was aware of the importance of containing the costs associated with the code upgrade issue.

21.     On February 27, 2017, Forman advised Plaintiff "we are on the same page with the rates JE Roofing has submitted: however, we need to know when they plan to begin as well as sending their documentation in at least every two days so we can make sure anything unexpected can be addressed quickly."

22.     Then on February 28, 2017, Forman sent another e-mail to Plaintiff which reads:

> "I have informed the carrier that UBS has verified that the changes being made to the decking of the main church for the installment of new tile is being required and enforced by the city of Fort Worth. *Code upgrade costs are indemnified once incurred* when they fall under this city of FT. Worth enforcement. Due to the uniqueness of the operation and since it hasn't been done before, this is why we are tracking the costs in this way as agreed with JE Roofing." (Emphasis added.)

4

18-10713.240

23.     Plaintiff's roofing contractor regularly submitted to Defendant York the "time and materials" invoices in accordance with the requirements of Defendant York.

24.     Before Jeff Eubank Roofing was cleared by Defendant York to start the re-decking on a "time and materials" basis, it had already started to replace the roof.

25.     On April 28, 2017, Jeff Eubank Roofing sent an invoice to Plaintiff. The invoice included "Extras" which were 7 weeks of charges totaling $582,944.75. On May 1, 2017, after receiving this invoice, Plaintiff sent an e-mail to Forman which states: "We haven't seen written confirmation yet that insurance will provide the funds for the work required by the engineer. I know you told me on the phone that would be included, but I'd love to get that in writing."

26.     At this point, Defendant York realized it had failed to properly monitor the work and invoices of the roofing contractor. In spite of his prior representations and promises, Defendant York, through Forman, had allowed the work by the roofing contractor to greatly exceed the code enforcement limit of $250,000.00 without notifying Plaintiff.

27.     Neither Defendant York nor Defendant Lexington informed Plaintiff that the code upgrade costs were exceeding the policy limits until May of 2017.

28.     On July 11, 2017, Plaintiff's Pastor e-mailed Defendant Lexington and informed Defendant Lexington that its prior inquiries about the status of the claim had gone unresponded to. The e-mail recalled a conversation Plaintiff's Pastor had with Forman in which Forman stated that he was "alarmed at the skyrocketing costs for the repairs and implied that the church could potentially be responsible." Plaintiff's Pastor further informed Defendant Lexington that it had not received weekly updates regarding the "time and materials" charges. Plaintiff's Pastor further informed Defendant Lexington that the Plaintiff "endured increased exposure to the roof and the

5

18-10713.241

church itself." Plaintiff's Pastor informed Defendant Lexington that it had asked Jeff Eubank Roofing to cease work on the roof.

29.    Defendant York and Defendant Lexington, in effect, gave a blank check to Jeff Eubank Roofing by failing to get an agreed scope or a competitive bid and by failing to properly monitor the work being performed on a "time and materials" basis.

30.    Defendant York and Defendant Lexington failed to inform Plaintiff of the consequences of the "time and materials" billing until well after the code upgrade work was substantially performed and the costs incurred.

31.    Defendant York and Defendant Lexington excluded Plaintiff from the process and, in doing so, deprived Plaintiff of the opportunity to refuse the work or to re-bid the work. As such, Defendant York and Defendant Lexington committed Plaintiff to several hundred thousands of dollars in expense without the consent or knowledge of Plaintiff.

32.    Jeff Eubank Roofing ultimately charged $864,148.49 in "time and materials" related to the code upgrade for Plaintiff's Property.

33.    As a result of the acts and omissions of Defendant Lexington and Defendant York, Plaintiff was forced to take a loan to pay for the extra work performed by Jeff Eubank Roofing. The loan required the payment of closing costs and the ongoing payment of interest. These damages outside regular policy benefits would not have been incurred or would have been greatly minimized but for the actions of Defendant York and Defendant Lexington.

34.    Neither Defendant York nor Defendant Lexington informed Plaintiff that the code upgrade costs were exceeding the policy limits until May of 2017.

35.    Prior to the date of loss, the Property had a roof with Ludowici architectural roofing. The original bid by Jeff Eubank Roofing included this same type of tile as replacement. Defendant

6

18-10713.242

Lexington and Defendant York refused to approve the use of the Ludowici tile; instead, these Defendants would only approve an inferior tile made by Verea. Verea is of a lesser quality than Ludowici and is not as durable as Ludowici.  Therefore, Defendant Lexington breached the term of the Policy which required it to pay "the cost to repair, replace or rebuild the property with material of like kind and quality." By employing this strategy, Defendants greatly circumscribed and limited the benefits available to Plaintiff under the Policy.

36.    As a result of the actions set forth above, Plaintiff was forced to hire Hoch Law Firm, P.C. to represent it with respect to these causes of action.

37.    Defendants failed and refused to pay Plaintiff an appropriate amount for losses and damages caused to Plaintiff's property by an occurrence covered under their contract of insurance.

## IV.

## AGENCY

38.    All acts by Defendant Lexington were undertaken and completed by its officers, agents, servants, employees, or representatives, including Defendant York. All such acts were either done with the full authorization or ratification of Defendant Lexington or were completed in their normal and routine course and scope of employment.

39.    All acts by Defendant York were undertaken and completed by its officers, agents, servants, employees, or representatives, including Kevin Forman and Unified Building Sciences. All such acts were either done with the full authorization or ratification of Defendant York or were completed by Forman and Unified Building Sciences, Inc. on behalf of Defendant York in the normal and routine course and scope of their employment or engagement.

## V.

## BREACH OF CONTRACT-LEXINGTON

7

18-10713.243

40.    Plaintiff contracted with Defendant Lexington for property and casualty insurance on the Property made the basis of this lawsuit. As part of the contract for insurance, Plaintiff paid Defendant Lexington premiums as required under the terms of the Policy. Defendant Lexington agreed to "pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." The damage to the Plaintiff's building was the type covered by the contract for insurance. The contract further required Defendant Lexington to pay for materials of like kind and quality to repair the roof.

41.    Defendant Lexington breached the contract by failing to pay full benefits due in a timely manner in accordance with the terms of the Policy.

42.    Defendant Lexington's adjuster and agent made certain representations to Plaintiff regarding the coverage available for code enforcement. Defendant Lexington failed to honor those representations.

43.    Neither Defendant York nor Defendant Lexington informed Plaintiff that the code upgrade costs were exceeding the policy limits until May of 2017.

44.    Defendant York and Defendant Lexington gave a blank check to Jeff Eubank Roofing by failing to get an agreed scope or a competitive bid.

45.    Defendant York and Defendant Lexington failed to inform Plaintiff of the consequences of the "time and materials" billing until well after the code upgrade work was substantially performed and the costs incurred.

46.    Defendant York and Defendant Lexington excluded Plaintiff from the process and, in doing so, deprived Plaintiff of the opportunity to refuse the work or to re-bid the work. As such, Defendant York and Defendant Lexington committed Plaintiff to several hundred thousands of dollars in expense without the consent or knowledge of Plaintiff.

8

18-10713.244

47.     This breach of contract by Defendant Lexington is a proximate cause of the damages suffered and to be suffered in the future by Plaintiff, for which Plaintiff now sues.

## VI.

## BREACH OF GOOD FAITH AND FAIR DEALING- LEXINGTON

48.     From and after the time the Plaintiff's claim was presented to Defendant Lexington, their liability to pay the claim in accordance with the terms of the Policy was reasonably clear.  Despite there being no basis on which a reasonable insurance company would have relied to deny payment of Plaintiff's claim, Defendant Lexington refused to accept the claim and pay Plaintiff.

49.     Defendant Lexington knew or should have known by the exercise of reasonable diligence that its liability was reasonably clear.  In this regard, Plaintiff would show that Defendant failed to conduct a reasonable, proper investigation of the claim and refused to rely on the true facts, resorting instead to producing faulty, incomplete, and biased reasons as subterfuges to avoid paying or partially paying a valid claim.

50.     Defendant Lexington knew or should have known that its agent, Defendant York, directed Jeff Eubank Roofing in how to handle the code upgrade work on the Property. Defendants required that the code upgrade work be performed on a "time and materials" basis which resulted in an amount far in excess of the code upgrade limit in the Policy and an amount well in excess of the original bid submitted by Plaintiff's roofing contractor.

51.     Defendant Lexington breached its duty to deal fairly and in good faith with the Plaintiff.  Defendant Lexington's breach was a producing cause of the losses, expenses, and damages suffered by the Plaintiff including damages for the interest and closing costs associated with Plaintiff having to take a loan to pay Jeff Eubank Roofing for the repairs that were caused by Defendant Lexington's bad faith. These losses include a separate and distinct measure of damages which would not have been incurred but for the bad faith committed by Defendant Lexington.

52.     Plaintiff also seeks exemplary damages in an amount to be assessed by the trier of fact caused by Defendant Lexington's bad faith.

18-10713.245

## VII.

### VIOLATIONS OF THE TEXAS INSURANCE CODE-LEXINGTON

53. Defendant Lexington engaged in unfair claim settlement practices prohibited by Section 541.060 of the Texas Insurance Code. All violations under this article are made actionable by Section 541.151 of the Texas Insurance Code.

54. Defendant Lexington meets the definition of a "person" as defined by Tex. Ins. Code §541.002(2).

55. Defendant Lexington failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiff's claim even though Defendant Lexington's liability had become reasonably clear. Tex. Ins. Code §541.060(a)(2)(A).

56. Defendant Lexington failed to promptly provide to Plaintiff a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for its denial of a claim or offer of a compromise settlement of a claim. Tex. Ins. Code §541.060(a)(3).

57. Defendant Lexington refused to pay Plaintiff's claim without conducting a reasonable investigation with respect to the claim. Tex. Ins. Code §541.060(a)(7).

58. Plaintiff would show that the acts, practices, and/or omissions complained of were the producing cause of Plaintiff's damages.

59. Plaintiff would further show the acts, practices, and/or omissions complained of under Chapter 541 of the Texas Insurance Code were relied upon by Plaintiff to Plaintiff's detriment and were committed "knowingly" by Defendant Lexington.

## VIII.

### NONCOMPLIANCE WITH TEXAS INSURANCE CODE: PROMPT PAYMENT OF CLAIMS-LEXINGTON

60. Defendant Lexington's conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. All violations of this article are made actionable by Tex. Ins. Code

10

§542.060.

61.     Defendant Lexington's failure to notify Plaintiff in writing of its acceptance or rejection of the claim within the applicable time constraints, constitutes a non-prompt payment of the claim. Tex. Ins. Code §542.056.

62.     Defendant Lexington failed to pay Plaintiff's claim after receiving all reasonably requested and required items from the insured. Tex. Ins. Code §542.058(a).

63.     Defendant Lexington failed to notify Plaintiff in writing of the rejection or acceptance of a claim no later than the 15th business day after Defendant Lexington received all items, statements, and forms required by Defendant Lexington to secure a final proof of loss. Tex. Ins. Code § 542.056(a).

64.     Defendant Lexington failed to notify the Plaintiff of the reasons for rejection of the claim. Tex. Ins. Code §542.056(c).

65.     Defendant Lexington failed to notify the Plaintiff of the reasons it needed an additional 45 days in additional time to accept or reject the claim. Tex. Ins. Code §542.056(d).

66.     Defendant Lexington failed to pay the claim within five days after the date it notified Plaintiff it would pay the claim. Tex. Ins. Code §542.057.

67.     All of the aforementioned acts are a producing cause of Plaintiff's damages for which Plaintiff now sues.

## IX.

## VIOLATIONS OF THE DECEPTIVE TRADE PRACTICES ACT-LEXINGTON

68.     As authorized by Tex. Ins. Code §542.151, Plaintiff brings this private action for damages for violations of the Texas Deceptive Trade Practices Act, Tex. Bus. & Comm. Code §§ 17.41 et seq.

69.     Plaintiff is a "consumer" as defined by the Texas Deceptive Trade Practices Act, Tex. Bus. & Comm. Code §17.45(4) because it is a business who sought or acquired by purchase or lease, goods or services, for commercial, personal or household use.

11

18-10713.247

70.     Plaintiff relied on the acts and practices enumerated below to its detriment.

71.     Defendant Lexington, by and through its authorized agents, represented that an agreement confers or involves rights, remedies, or obligations which it does not have or involve. Tex. Bus. & Comm. Code §17.46(b)(12).

72.     Defendant Lexington, by and through its authorized agents, employed an act or practice in violation of the Texas Insurance Code, Chapter 541 as more specifically enumerated in Section VII, above. Tex. Bus. & Comm. Code §17.50(a)(4).

73.     Defendant Lexington represented that the services of its adjuster, Defendant York, were of a particular standard, quality or grade, when they were of another. Tex. Bus. & Comm. Code §17.46(b)(7).

74.     All of the aforementioned acts are a producing cause of Plaintiff's damages for which Plaintiff now sues.

75.     Because Defendant Lexington's collective actions and conduct were committed knowingly and intentionally, in addition to the damages described herein, Plaintiff is entitled three times the amount of economic damages. Tex. Bus. & Comm. Code §17.50(b)(1).

76.     Plaintiff also seeks to recover its costs and reasonable and necessary attorney's fees as permitted by Tex. Bus. & Comm. Code §17.50(d).

## X.

### VIOLATIONS OF THE TEXAS INSURANCE CODE-YORK

77.     Defendant York engaged in unfair claim settlement practices prohibited by Tex. Ins. Code §541.060. All violations under this article are made actionable by Tex. Ins. Code §541.151.

78.     Defendant York failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiff's claim even though Defendant Lexington's liability had become reasonably clear. Tex. Ins. Code §541.060(a)(2)(A).

79.     Defendant York failed to promptly provide to Plaintiff a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for its denial of a claim or offer of a

12

18-10713.248

compromise settlement of a claim. Tex. Ins. Code §541.060(a)(3).

80.    Defendant York refused to pay Plaintiff's claim without conducting a reasonable investigation with respect to the claim. Tex. Ins. Code §541.060(a)(7).

81.    Defendant York misrepresented material facts or policy provisions related to coverage. Tex. Ins. Code §541.060(a)(1).

82.    Plaintiff would show that the acts, practices and/or omissions complained of were the producing cause of Plaintiff's damages.

83.    Plaintiff would further show the acts, practices, and/or omissions complained of under Chapter 541 of the Texas Insurance Code were relied upon by Plaintiff to Plaintiff's detriment and were committed "knowingly" by Defendant York.

## XI.

## VIOLATIONS OF THE DECEPTIVE TRADE PRACTICES ACT-YORK

84.    As authorized by Tex. Ins. Code §542.151, Plaintiff brings this private action for damages for violations of the Texas Deceptive Trade Practices Act, Tex. Bus. & Comm. Code §§ 17.41 et seq.

85.    Plaintiff is a "consumer" as defined by the Texas Deceptive Trade Practices Act, Tex. Bus. & Comm. Code §17.45(4) because it is a business who sought or acquired by purchase or lease, goods or services, for commercial, personal, or household use.

86.    Plaintiff relied on the acts and practices enumerated below to its detriment.

87.    Defendant York, by and through its authorized agents, represented that an agreement confers or involves rights, remedies, or obligations which it does not have or involve. Tex. Bus. & Comm. Code §17.46(b)(12).

88.    Defendant York, by and through its authorized agents, employed an act or practice in violation of the Texas Insurance Code, Chapter 541, as more specifically enumerated in Section VII, above. Tex. Bus. & Comm. Code §17.50(a)(4).

89.    Defendant York represented that its services were of a particular standard, quality, or grade, when they were of another. Tex. Bus. & Comm. Code §17.46(b)(7).

13

18-10713.249

90.     All of the aforementioned acts are a producing cause of Plaintiff's damages for which Plaintiff now sues.

91.     Because Defendant York's collective actions and conduct were committed knowingly and intentionally, in addition to the damages described herein, Plaintiff is entitled three times the amount of economic damages.  Tex. Bus. & Comm. Code §17.50(b)(1).

92.     Plaintiff also seeks to recover its costs and reasonable and necessary attorney's fees as permitted by Tex. Bus. & Comm. Code §17.50(d).

## XII.

## PROMISSORY ESTOPPEL- YORK

93.     In the alternative, Defendant York is estopped from claiming that Plaintiff is not entitled to proceeds that were expended to bring Plaintiff's roof into compliance with City of Fort Worth Building Codes. Defendant York worked directly with Jeff Eubank Roofing to the exclusion of Plaintiff. Plaintiff relied on Defendant York to adjust the claim properly and to monitor the costs associated with the replacement of the roof.

94.     By overseeing the adjustment of the Plaintiff's claim, Defendant York represented that it would adjust the claim fairly and properly. Defendant York also promised to prepare and present an "agreed scope" for the repairs to Plaintiff's roof. Defendant York knew or should have known that Plaintiff would rely on this promise by Defendant York. Plaintiff relied to its detriment on the promises of Defendant York to properly monitor the work of Jeff Eubank Roofing and to provide an agreed scope.

95.     The detrimental reliance by Plaintiff on the promises of Defendant York were a producing cause of damages to Plaintiff for which Plaintiff now sues.

14

18-10713.250

## XIII.

## CONDITIONS PRECEDENT

96.    By letter dated August 23, 2017, Plaintiff gave Notice as required under the Texas

Deceptive Trade Practices Act (Texas Business & Commerce Code Section 17.45 et seq) and the

Texas Insurance Code Sections 541 and 542 et seq. All other conditions precedent to filing suit

have been met, including Plaintiff's payment of the insurance premium to Defendant Lexington.

## XIV.

## JURY DEMAND

97.    Plaintiff demands a jury trial on all facts and issues allowable under the Seventh

Amendment to the U.S Constitution.

## XV.

## PRAYER

98.    For these reasons, Plaintiff asks that Defendants be cited to appear and answer, and

that upon final trial, Plaintiff have judgment against Defendants for:

(a)    Actual damages including benefits owed under the Policy, and actual damages outside the Policy for costs of re-decking the roof of the Property and for costs associated with the loan taken by Plaintiff to pay the roofing contractor;

(b)    Reasonable and necessary attorney's fees;

(c)    Extra-contractual damages for violations of the Texas Insurance Code and the Texas Deceptive Trade Practices Act including exemplary and punitive damages for knowing violations;

(d)    Pre-judgment and post-judgment interest as allowed by law;

(e)    Costs of court;

(f)    All other relief, at law or in equity, to which Plaintiff may be entitled.

15

18-10713.251

Respectfully submitted,

Timothy M. Hoch
Texas Bar No. 09744950

HOCH LAW FIRM, P.C.
5616 Malvey Avenue
Fort Worth, Texas 76107
(817)731-9703
(817)731-9706 – facsimile
E-mail: tim@hochlawfirm.com

ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I, the undersigned attorney, do hereby certify that a true and correct copy of the foregoing document was forwarded to the following counsel of record on this 8th day of February, 2018 in accordance with the Federal Rules of Civil Procedure:

Brett A. Wallingford
Texas Bar No. 00797618
bwallinfgord@zelle.com
Walter W. Cardwell IV
Texas Bar No. 24094419
wcardwell@zelle.com
Zelle LLP
901 Main Street, Suite 4000
Dallas, TX  75202-3975

ATTORNEYS FOR DEFENDANT,
LEXINGTON INSURANCE COMPANY

Robert M. Rosen
Texas Bar No. 24060520
rrosen@pmmclaw.com
David A. Walton
Texas Bar No. 24075623
dwalton@pmmclaw.com
Ryan D. Starbird
Texas Bar No. 24075623
rstarbird@pmmclaw.com
Parsons McIntire McCleary & Clark,PLLC
1700 Pacific Avenue, Suite 4400
Dallas, TX  75201

ATTORNEYS FOR DEFENDANT,
YORK RISK SERVICES GROUP, INC.

TIMOTHY M. HOCH

16

18-10713.252

TAB 3

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAY 16 2018

CLERK, U.S. DISTRICT COURT
By _____
           Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

UNIVERSITY BAPTIST CHURCH §
FORT WORTH, §
§
Plaintiff, §
§
VS. § NO. 4:17-CV-962-A
§
LEXINGTON INSURANCE COMPANY §
AND YORK RISK SERVICES GROUP INCS, §
§
Defendants. §

MEMORANDUM OPINION
and
ORDER

Came on for consideration in the above-captioned action the motion to dismiss filed by defendant York Risk Services Group, Inc. ("York"). The court, having considered the motion, the response of plaintiff, University Baptist Church of Fort Worth, thereto, York's reply, the entire record, including the supplemental authority submitted by plaintiff, and the applicable legal authorities, finds that the motion should be granted.

I.

Plaintiff's Amended Complaint

Plaintiff's live pleading is Plaintiff's Amended Complaint. In it, plaintiff alleges the following claims against York:

York was hired by defendant Lexington Insurance Company ("Lexington") to adjust the alleged loss sustained to plaintiff's property following a hail and wind storm on March 17, 2016.

18-10713.422

Doc.[1] 19 at 2, ¶¶ 7-8.  York, in turn, assigned one of its employees, Kevin Forman ("Forman"), to examine the property and adjust the loss.  Id., ¶ 8.  On September 14, 2016, Lexington sent documentation to plaintiff indicating that the undisputed loss and agreed scope of costs for replacement of the roof was $586,040.20.  Id. at 3, ¶¶ 9 & 11.  Also in September, after concerns arose about whether plaintiff's commercial property complied with the necessary code requirements, Forman retained a third party to inspect the roof and address the code upgrade issues.  Id., ¶ 13.  Forman notified plaintiff on September 26, 2016, that plaintiff would be receiving a copy of an engineering report from the engineer retained by the third party, and a related invoice from Jeff Eubank Roofing ("JE Roofing"), and requested that plaintiff forward that information to Forman upon receipt for the purpose of developing with plaintiff an agreed scope for the additional improvements required.[2]  Id., ¶ 14.  On November 23, 2016, JE Roofing submitted to Forman a code upgrade bid of $285,798.00  Id., ¶ 16.  In December 2016 and January 2017 Forman discussed with JE Roofing the proposed cost of the code

---

[1]The "Doc.___" reference is to the number assigned to the referenced item on the docket in this action, No. 4:17-CV-962-A.

[2]The email read, in pertinent part: "When you receive a copy of the engineering report and related invoice . . . , please forward me a copy for review so we can develop an agreed scope for the additional decking required." Id., ¶ 14. (emphasis removed).

18-10713.423

upgrade project.  Id. at 4, ¶¶ 18-19.  It was agreed that "the

cost of re-decking the main chapel" would be conducted on a "time

and material" basis, "due to the uniqueness of the project."

Id., ¶ 19.  Forman sent JE Roofing the forms to be used for

tracking time and materials with instructions that in order to

avoid any concerns or misunderstandings, the forms were to be

returned within two days of the applicable activity.  Id., ¶ 20.

On February 28, 2017, Forman sent an email to plaintiff that

read:

> I have informed the carrier that [the third-party]
> has verified that the changes being made to the decking
> of the main church for the installment of new tile is
> being required and enforced by the city of Fort Worth.
> Code upgrade costs are indemnified once incurred when
> they fall under this city of FT. Worth enforcement. Due
> to the uniqueness of the operation and since it hasn't
> been done before, this is why we are tracking the costs
> in this way as agreed with JE Roofing.

Id. at 4, ¶ 22 (emphasis removed).

Plaintiff alleged that before York's approval was given for

the work to begin, JE Roofing had already begun replacing the

roof.  Id. at 5, ¶ 24.  Plaintiff also alleged that the roofing

contractor regularly submitted to York the invoices or forms as

agreed.  Id., ¶ 23.

On April 28, 2017, Plaintiff received an invoice that

included seven weeks of "Extras" charges in the amount of

$582,944.75.  Id., ¶ 25.  Plaintiff asked Forman several days

18-10713.424

later to confirm in writing that the insurance would "provide the funds for the work required by the engineer." Id. On July 11, 2017, plaintiff, through the church's pastor, informed Lexington "that its prior inquiries about the status of the claim had gone unresponded to." Id., ¶ 28. The pastor, in the email he sent to Lexington "recalled a conversation [the pastor] had with Forman in which Forman stated that he was 'alarmed at the skyrocketing costs for the repairs and implied that the church could potentially be responsible.'" Id. The pastor also informed Lexington at this time that it had not received weekly updates regarding progress on the re-decking, that plaintiff "endured increased exposure to the roof and the church itself," and that plaintiff had instructed JE Roofing to cease work on the roof. Id., at 5-6, ¶ 28. JE Roofing charged $864,148.49 in "time and materials" related to the code upgrade for plaintiff's property. Id., at 5, ¶ 32.

"Defendants failed and refused to pay [p]laintiff an appropriate amount for losses and damages caused to [p]laintiff's property by an occurrence covered under their contract . . . ." Id., ¶ 37. Plaintiff was required to take out a loan to pay for "the extra work" performed by JE Roofing. Id., ¶ 33.

Based on these allegations, plaintiff has brought claims against York for violations of the Texas Insurance Code, namely

4

sections 541.060(a)(1), 541.060(a)(2)(A), 541.060(a)(3), and 541.060(a)(7), for violations of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code §§ 17.41-.63, particularly sections 17.45, 17.46, and 17.50, and for promissory estoppel.

## II.

### Grounds of the Motion

York moves to dismiss plaintiff's claims against it on the grounds that (1) plaintiff failed to allege in its amended complaint the necessary "who, what, where, when, and how" of York's purported statutory violations, (2) plaintiff failed to allege that plaintiff suffered any extra-contractual damages as a result of York's actions, and (3) plaintiff's promissory estoppel claim fails as a matter of law.

## III.

### Applicable Pleading Standards

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides, in a general way, the applicable standard of pleading. It requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal

5

18-10713.426

quotation marks and ellipsis omitted).  Although a complaint need not contain detailed factual allegations, the "showing" contemplated by Rule 8 requires the plaintiff to do more than simply allege legal conclusions or recite the elements of a cause of action.  Twombly, 550 U.S. at 555 & n.3.  Thus, while a court must accept all of the factual allegations in the complaint as true, it need not credit bare legal conclusions that are unsupported by any factual underpinnings.  See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

Moreover, to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, the facts pleaded must allow the court to infer that the plaintiff's right to relief is plausible. Iqbal, 556 U.S. at 678.  To allege a plausible right to relief, the facts pleaded must suggest liability; allegations that are merely consistent with unlawful conduct are insufficient.  Id. In other words, where the facts pleaded do no more than permit the court to infer the possibility of misconduct, the complaint has not shown that the pleader is entitled to relief.  Id. at 679.  "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the

18-10713.427

reviewing court to draw on its judicial experience and common sense." Id.

Rule 9(b) of the Federal Rules of Civil Procedure sets forth the heightened pleading standard imposed for fraud claims: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The Fifth Circuit requires a party asserting fraud to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." Hermann Holdings, Ltd. v. Lucent Techs., Inc., 302 F.3d 552, 564-65 (5th Cir. 2002) (internal quotations and citations omitted). Succinctly stated, Rule 9(b) requires a party to identify in its pleading "the who, what, when, where, and how" of the events constituting the purported fraud. Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 339 (5th Cir. 2008). Claims alleging violations of the Texas Insurance Code are subject to the requirements of Rule 9(b). Frith v. Guardian Life Ins. Co. of Am., 9 F. Supp. 2d 734, 742 (S.D. Tex. 1998), as are claims alleging violations of the DTPA. Id. at 742-43; see also Berry v. Indianapolis Life Ins. Co., 608 F. Supp. 2d 785, 800 (N.D. Tex. Mar. 11, 2009).

7

18-10713.428

IV.

Analysis

A.    Texas Insurance Code Claims

Plaintiff's amended complaint alleged several violations by York of section 541.060 of the Texas Insurance Code.  To the extent that plaintiff alleged that York violated section 541.060(a)(2)(A), (a)(3), and (a)(7), this court and others have routinely held that liability under these provisions cannot be imposed on adjusters, and instead applies to the insurer itself. McClelland v. Chubb Lloyd's Ins. Co., No. 5:16-CV-00108, 2016 WL 5791206, at *3 (W.D. Tex. Sept. 30, 2016); Lopez v. United Prop. & Cas. Ins. Co., 197 F. Supp. 3d 944, 950 (S.D. Tex. July 11, 2016); Meritt Buffalo Events Ctr., L.L.C. v. Cent. Mut. Ins. Co., No. 3:15-CV-3741-D, 2016 WL 931217, at *4 (N.D. Tex. Mar. 11, 2016); Mainali Corp. v. Covington Specialty Ins. Co., No. 3:15-CV-1087-D, 2015 WL 5098047, at *3 (N.D. Tex. Aug. 31, 2015). Because York was the adjuster retained by Lexington to adjust plaintiff's claims, rather than the insurer, such claims against York must fail.

Plaintiff next alleged that York violated section 541.060(a)(1) by "misrepresent[ing] material facts or policy provisions related to coverage."  Doc. 19 at 13, ¶ 81.  In the context of section 541.060 claims, a misrepresentation is

8

18-10713.429

actionable if it is both specific and affirmative. Metro Hosp.
Partners, Ltd. v. Lexington Ins. Co., 84 F.Supp.3d 553, 573 (S.D.
Tex. 2015). "The misrepresentation must be about the details of
a policy, not the facts giving rise to a claim for coverage."
Messersmith v. Nationwide Mut. Fire Ins. Co., 10 F.Supp.3d 721,
724 (N.D. Tex. 2014).

Plaintiff does not identify which specific facts give rise
to this purported violation, or which policy provision York
misrepresented. Instead, plaintiff relies on the previously
listed factual allegations, leaving the court and defendants to
speculate as to which specific facts might give rise to any
liability under 541.060(a)(1). In other words, plaintiff has not
alleged such a claim with the specificity required by Rule 9.
Because plaintiff failed to clearly identify the requisite "who,
what, when, where, and how" of any purported violation related to
any of the statements it alleges York, or York through Forman,
made, such claim should be dismissed. Dorsey, 540 F.3d at 339.

Moreover, none of the statements alleged by plaintiff, if
the court were to guess which of York's statements was intended
to support plaintiff's section 541.060(a)(1) claim, involves the
details of the policy. Messersmith, 10 F.Supp.3d at 724
(defendant must represent that plaintiff "would receive a
particular kind of policy that it did not receive" or "denied

9

18-10713.430

coverage against loss under specific circumstances that it previously had represented would be covered.").

Finally, to the extent that plaintiff seeks from York damages outside regular policy benefits, plaintiff's section 541.060(a)(1) claim fails for the additional reason that "[t]here can be no recovery for extra-contractual damages for mishandling claims unless the complained of actions or omissions caused injury independent of those that would have resulted from a wrongful denial of policy benefits." Parkans Intern. LLC v. Zurich Ins. Co., 299 F.3d 514, 519 (5th Cir. 2002). Plaintiff has not alleged that the proximate cause of its alleged damages was the manner in which York investigated its claim. Mital Hospital, Inc. v. Evanston Ins. Co., No. 4:16-CV-893, 2016 WL 7165976, at *4 (N.D. Tex. Dec. 6, 2016)(citing Provident Am. Ins. Co. v. Castaneda, 988 S.W.2d 189, 198-99 (Tex. 1998)).

Thus, plaintiff has not stated a claim against York for violations of § 541.060 of the Texas Insurance Code.

B.    Deceptive Trade Practices Act Claims

Plaintiff's complaint next alleged claims against York for violations of the DTPA. The DPTA provides recourse to consumers who are victims of "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce" to recover for such clams. Tex. Bus. & Com. Code § 17.46(a). The elements of a

10

18-10713.431

DTPA claim are: "(1) the plaintiff is a consumer; (2) the defendant engaged in false, misleading, or deceptive acts; and (3) these acts constituted a producing cause of the consumer's damages". Hugh Symons Group, plc v. Motorola, Inc., 292 F.3d 466, 468 (5th Cir. 2002). Claims under the DTPA are subject to the heightened pleading requirements of Rule 9(b). Berry v. Indianapolis Life Ins. Co., 608 F. Supp. 2d 785, 800 (N.D. Tex. Mar. 11, 2009).

Plaintiff specifically alleged that plaintiff violated sections 17.46(b)(7) and (b)(12), and section 17.50(a)(4) by:

a.   [Representing] that [York's] services were of a particular standard, quality, or grade, when they were of another.

b    [Representing] that an agreement confers or involves rights, remedies, or obligations which it does not have or involve.

c.   [Employing] an act or practice in violation of the Texas Insurance Code, Chapter 541, as more specifically enumerated in Section VII, above.

Doc. 19 at 13, ¶¶ 87-89. These statements, taken together, demonstrate another instance where plaintiff has failed to point to the specific factual allegations supporting its claims. Plaintiff merely cited the statutory language and left it up to the court's and the defendants' imagination as to what factual allegations support plaintiff's claims. Plaintiff's attempt to cross-reference or incorporate by reference section VII of the

11

18-10713.432

amended complaint fairs no better, as that section of the amended complaint consists solely of conclusory allegations against Lexington. Plaintiff has not identified the "who, what, when, where, and how" of the purported violations. Dorsey, 540 F.3d at 339. Even speculating which facts might apply, the court finds that plaintiff has failed to state any claim against York.

C.   Promissory Estoppel Claim

Plaintiff finally urges the court in its amended complaint that "York is estopped from claiming that Plaintiff is not entitled to proceeds that were expended to bring Plaintiff's roof into compliance with City of Fort Worth Building Codes." Doc. 19 at 14, ¶ 93.

"Although promissory estoppel is normally a defensive theory, it is an available cause of action to a promisee who relied to his detriment on an otherwise unenforceable promise." Frost Crushed Stone Co., Inc. v. Odell Greer Constr. Co., 110 S.W.3d 41, 44 (Tex. App.—Waco 2002, no pet.)(citing Wheeler v. White, 398 S.W.2d 93, 96-97 (Tex. 1965)). The requisite elements of a promissory estoppel claim are: (1) a promise, (2) foreseeability of reliance thereon by the promisor, (3) substantial reliance by the promisee to his detriment. MetroplexCore, L.L.C. v. Parsons Transp., Inc., 743 F.3d 964, 977

12

18-10713.433

(5th Cir. 2014); see also English v. Fischer, 660 S.W.2d 521, 524 (Tex. 1983); Frost Crushed Stone Co., Inc., 110 S.W.3d at 44.

To support its promissory estoppel claim, plaintiff alleges that (1) York worked directly with JE Roofing to the exclusion of plaintiff, (2) plaintiff relied on York to adjust the claim properly and to monitor the costs associated with roof replacement, (3) York "promised to prepare and present an 'agreed scope'" for plaintiff's roof repair, (4) York knew or should have known plaintiff would rely on this promise, (5) plaintiff relied to its detriment on York's promise, and (6) such reliance was the producing cause of plaintiff's damages. Doc. 19 at 14, ¶¶ 93-95.

York argues that plaintiff "has not sufficiently alleged a 'definite, unconditional promise' by York," "has [] failed to allege that it substantially relied on any promise by York, much less that its reliance was both reasonable and justified," or that plaintiff materially changed its position in reliance on York's promise. Doc. 21 at 15-16. York further challenges plaintiff's pleadings on the grounds that, among other things, plaintiff is attempting to use promissory estoppel "despite the presence of related contractual agreements." Id. at 16.

A promissory estoppel claim requires a "definite, unconditional promise," Elite Center for Minimal Invasive Surgery, LLC v. Health Care Serv. Corp., 221 F.Supp.3d 853, 863

18-10713.434

(S.D. Tex. 2016), that is "sufficiently specific and definite so that it would be reasonable and justified for the promisee to rely on it." <u>Davis v. Tex. Farm. Bureau Ins.</u>, 470 S.W.3d 97, 108 (Tex. App.-Houston [1st Dist.] 2015, no pet.). And, the promisee's reliance on the promise must be "reasonable and justified." <u>Addicks Servs., Inc. v. GGP-Bridgeland, LP</u>, 596 F.3d 286, 300 (5th Cir. 2010).

Having reviewed plaintiff's pleadings, the court is satisfied that plaintiff has failed to state an affirmative promissory estoppel claim against York. The only promise plaintiff alleges in its amended complaint that York made to it was that York would "prepare and present an 'agreed scope'" for plaintiff's roof repair. Doc. 19 at 14, ¶ 94. Apparently, this "promise" was made when Forman sent an email stating, "When you receive a copy of the engineering report and related invoice from Jeff Eubank Roofing, please forward me a copy for review so we can develop an agreed scope for the additional decking required." Doc. 19 at 4, ¶ 14; <u>supra</u> at 2 n. 2. Such statement is too vague and indefinite to constitute a promise to satisfy plaintiff's pleading requirement on this claim. <u>Elite Center for Minimal Invasive Surgery, LLC</u>, 221 F.Supp.3d at 863. And, the remaining elements of the promissory estoppel claim have been alleged in a conclusory manner, without factual underpinnings to support them.

14

18-10713.435

Plaintiff also urges in its response to York's motion that paragraphs 20, 21, 22, at 25 of the amended complaint allege promises York made to plaintiff. Doc. 23 at 9. However, a review of plaintiff's amended complaint does not point to any of these statements as promises supporting its promissory estoppel claim against York. Even if it did, plaintiff has not alleged that it relied on those statements to its detriment, nor that such reliance was foreseeable by defendant.

For these reasons, the court finds that plaintiff has failed to plead a promissory estoppel claim.

V.

Order

Therefore, for the foregoing reasons,

The court ORDERS that the motion of York be, and is hereby, granted, and plaintiff's claims against York be, and are hereby, dismissed.

The court further ORDERS that from this point forward, the style of this case shall read "University Baptist Church of Fort Worth, Plaintiff, v. Lexington Insurance Company, Defendant."

The court determines that there is no just reason for delay in, and hereby directs, entry of final judgment as to the

15

18-10713.436

dismissal of plaintiff's claims against York.

SIGNED May 16, 2018

JOHN McBRYDE
United States District Judge

18-10713.437

TAB 4

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAY I 6 2018

CLERK, U.S. DISTRICT COURT
By_____
Deputy

UNIVERSITY BAPTIST CHURCH §
OF FORT WORTH, §
§
Plaintiff, §
§
VS. § NO. 4:17-CV-962-A
§
LEXINGTON INSURANCE COMPANY §
AND YORK RISK SERVICES §
GROUP, INC., §
§
Defendants. §

## FINAL JUDGMENT AS TO CERTAIN PARTY

Consistent with the memorandum opinion and order signed earlier on the date of the signing of this final judgment as to certain party,

The court ORDERS, ADJUDGES, and DECREES that all claims and causes of action asserted by University Baptist Church of Fort Worth against York Risk Services Group, Inc. be, and are hereby, dismissed with prejudice.

SIGNED May 16, 2018

_____
JOHN McBRYDE
United States District Judge

18-10713.438

TAB 5

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

UNIVERSITY BAPTIST CHURCH     §
FORT WORTH,                   §
                             §
        Plaintiff,            §
                             §
VS.                           §       NO. 4:17-CV-962-A
                             §
LEXINGTON INSURANCE COMPANY   §
AND YORK RISK SERVICES GROUP, INC., §
                             §
        Defendants.           §

AMENDED
MEMORANDUM OPINION
and
ORDER
(This amended memorandum opinion and order
is effective May 16, 2018, and replaces
in its entirety the memorandum opinion and
order signed in this action on May 16, 2018.)

Came on for consideration in the above-captioned action the

motion to dismiss filed by defendant York Risk Services Group,

Inc. ("York"). The court, having considered the motion, the

response of plaintiff, University Baptist Church of Fort Worth,

thereto, York's reply, the entire record, including the

supplemental authority submitted by plaintiff, and the applicable

legal authorities, finds that the motion should be granted.

18-10713.439

I.

<u>Plaintiff's Amended Complaint</u>

The following is an abbreviated form of the allegations against York in plaintiff's live pleading, Plaintiff's Amended Complaint:

York was hired by defendant Lexington Insurance Company ("Lexington") to adjust the alleged loss sustained to plaintiff's property following a hail and wind storm on March 17, 2016. Doc.[1] 19 at 2, ¶¶ 7-8. York, in turn, assigned one of its employees, Kevin Forman ("Forman"), to examine the property and adjust the loss. <u>Id.</u>, ¶ 8. On September 14, 2016, Lexington sent documentation to plaintiff indicating that the undisputed loss and agreed scope of costs for replacement of the roof was $586,040.20. <u>Id.</u> at 3, ¶¶ 9 & 11. Also in September, after concerns arose about whether plaintiff's commercial property complied with the necessary code requirements, Forman retained a third party to inspect the roof and address the code upgrade issues. <u>Id.</u>, ¶ 13.

Forman notified plaintiff on September 26, 2016, that plaintiff would be receiving a copy of an engineering report from the engineer retained by the third party, and a related invoice

---

[1]The "Doc.___" reference is to the number assigned to the referenced item on the docket in this action, No. 4:17-CV-962-A.

2

from Jeff Eubank Roofing ("JE Roofing"), and requested that plaintiff forward those items to Forman upon receipt for the purpose of developing with plaintiff an agreed scope for the additional improvements required.[2] Id., ¶ 14. On November 23, 2016, JE Roofing submitted to Forman a code upgrade bid of $285,798.00 Id., ¶ 16. In December 2016 and January 2017 Forman discussed with JE Roofing the proposed cost of the code upgrade project. Id. at 4, ¶¶ 18-19. The decision was made that "the cost of re-decking the main chapel" would be conducted on a "time and material" basis, "due to the uniqueness of the project." Id., ¶ 19. Forman sent JE Roofing the forms to be used for tracking time and materials with instructions that in order to avoid any concerns or misunderstandings, the forms were to be returned within two days of the applicable activity. Id., ¶ 20.

On February 28, 2017, Forman sent an email to plaintiff that read:

> I have informed the carrier that [the third-party] has verified that the changes being made to the decking of the main church for the installment of new tile is being required and enforced by the city of Fort Worth. Code upgrade costs are indemnified once incurred when they fall under this city of FT. Worth enforcement. Due to the uniqueness of the operation and since it hasn't been done before, this is why we are tracking the costs in this way as agreed with JE Roofing.

---

[2]The email read, in pertinent part: "When you receive a copy of the engineering report and related invoice . . . , please forward me a copy for review so we can develop an agreed scope for the additional decking required." Id., ¶ 14. (emphasis removed).

18-10713.441

Id. at 4, ¶ 22.  Before York's approval was given for the work to begin, JE Roofing had already begun replacing the roof.  Id. at 5, ¶ 24.  JE Roofing, which was the roofing contractor, regularly submitted to York the invoices or forms as required by York. Id., ¶ 23.

On April 28, 2017, Plaintiff received an invoice that included seven weeks of "Extras" charges in the amount of $582,944.75.  Id., ¶ 25.  Plaintiff asked Forman several days later to confirm in writing that the insurance would "provide the funds for the work required by the engineer."  Id.  On July 11, 2017, plaintiff, through the church's pastor, informed Lexington "that its prior inquiries about the status of the claim had gone unresponded to."  Id., ¶ 28.  The pastor, in the email he sent to Lexington "recalled a conversation [the pastor] had with Forman in which Forman stated that he was 'alarmed at the skyrocketing costs for the repairs and implied that the church could potentially be responsible.'"  Id.  The pastor also informed Lexington at this time that it had not received weekly updates regarding progress on the re-decking, that plaintiff "endured increased exposure to the roof and the church itself," and that plaintiff had instructed JE Roofing to cease work on the roof. Id., at 5-6, ¶ 28.  JE Roofing charged $864,148.49 in "time and

18-10713.442

materials" related to the code upgrade for plaintiff's property. Id., at 6, ¶ 32.

"Defendants failed and refused to pay [p]laintiff an appropriate amount for losses and damages caused to [p]laintiff's property by an occurrence covered under their contract of insurance." Id., ¶ 37. Plaintiff was required to take out a loan to pay for "the extra work" performed by JE Roofing. Id., ¶ 33.

Plaintiff's claims against York are alleged in sections X, XI, and XII of the amended complaint. In section X, plaintiff alleged that York violated section 541.060(a)(2)(A) of the Texas Insurance Code by failing "to attempt in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiff's claims even though Defendant Lexington's liability had become reasonably clear," id. at 12, ¶ 78; that York violated section 541.060(a)(3) by "refus[ing] to pay Plaintiff's claim without conducting a reasonable investigation with respect to the claim," id. at 13, ¶ 80; and, that York violated section 541.060(a)(1) by "misrepresent[ing] material facts or policy provisions related to coverage," id. ¶ 81. In section XI, plaintiff alleged that, as authorized by section 541.151 of the Texas Insurance Code, plaintiff is bringing a private action for violations of the Texas Deceptive Trade Practices Act ("DTPA"), sections 17.41 et

5

18-10713.443

seq. of the Texas Business & Commerce Code. Plaintiff, as a "consumer," as defined by the DTPA, relied on the acts and practices enumerated in section XI to its detriment. York represented that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, that York employed an act or practice in violation of chapter 541 of the Texas Insurance Code, and that its services were of a particular standard, quality, or grade, when they were of another. All of those "acts were a producing cause of Plaintiff's damages for which Plaintiff now sues." Id. at 14, ¶ 90. In section XII, plaintiff made a promissory estoppel claim against York, alleging that York is estopped from claiming that plaintiff is not entitled to proceeds that were expended to bring plaintiff's roof into compliance with the City of Fort Worth Building Codes, and concluding with the following assertion:

> 94. By overseeing the adjustment of the Plaintiffs claim, Defendant York represented that it would adjust the claim fairly and properly. Defendant York also promised to prepare and present an "agreed scope" for the repairs to Plaintiffs roof. Defendant York knew or should have known that Plaintiff would rely on this promise by Defendant York. Plaintiff relied to its detriment on the promises of Defendant York to properly monitor the work of Jeff Eubank Roofing and to provide an agreed scope.
>
> 95. The detrimental reliance by Plaintiff on the promises of Defendant York were a producing cause of damages to Plaintiff for which Plaintiff now sues.

Id., ¶¶ 94-95.

6

18-10713.444

II.

## Grounds of the Motion

York moves to dismiss plaintiff's claims against it on the grounds that (1) plaintiff failed to allege in its amended complaint the necessary "who, what, where, when, and how" of York's purported statutory violations, (2) plaintiff failed to allege that plaintiff suffered any extra-contractual damages as a result of York's actions, and (3) plaintiff's promissory estoppel claim fails as a matter of law.

III.

## Applicable Pleading Standards

A.   Rule 8(a)

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides, in a general way, the applicable standard of pleading. It requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks and ellipsis omitted). Although a complaint need not contain detailed factual allegations, the "showing" contemplated by Rule 8 requires the plaintiff to do more than simply allege legal conclusions or recite the elements of a cause

7

18-10713.445

of action.  Twombly, 550 U.S. at 555 & n.3.  Thus, while a court must accept all of the factual allegations in the complaint as true, it need not credit bare legal conclusions that are unsupported by any factual underpinnings.  See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

Moreover, to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, the facts pleaded must allow the court to infer that the plaintiff's right to relief is plausible. Iqbal, 556 U.S. at 678.  To allege a plausible right to relief, the facts pleaded must suggest liability; allegations that are merely consistent with unlawful conduct are insufficient.  Id. In other words, where the facts pleaded do no more than permit the court to infer the possibility of misconduct, the complaint has not shown that the pleader is entitled to relief.  Id. at 679.  "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.

B.    Rule 9(b)

Rule 9(b) of the Federal Rules of Civil Procedure sets forth the heightened pleading standard imposed for fraud claims: "In

8

18-10713.446

alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The Fifth Circuit requires a party asserting fraud to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." Hermann Holdings, Ltd. v. Lucent Techs., Inc., 302 F.3d 552, 564-65 (5th Cir. 2002) (internal quotations and citations omitted). Succinctly stated, Rule 9(b) requires a party to identify in its pleading "the who, what, when, where, and how" of the events constituting the purported fraud. Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 339 (5th Cir. 2008). Claims alleging violations of the Texas Insurance Code are subject to the requirements of Rule 9(b), Frith v. Guardian Life Ins. Co. of Am., 9 F. Supp. 2d 734, 742 (S.D. Tex. 1998), as are claims alleging violations of the DTPA, id. at 742-43; see also Berry v. Indianapolis Life Ins. Co., 608 F. Supp. 2d 785, 800 (N.D. Tex. Mar. 11, 2009).

IV.

Analysis

Plaintiff has failed to meet the Rule 8(a)(2) pleading standard as defined by the Supreme Court in Twombly and Iqbal as to any of its claims against York. Its allegations as to those claims are mere legal conclusions that are unsupported by factual

9

18-10713.447

underpinnings. As to the alleged statutory violations, plaintiff recites in its pleading only the elements of causes of action, not the factual bases of those elements. There are no facts alleged that would allow the court to infer that plaintiff has a right to relief against York under any of its three alleged causes of action. While plaintiff has a section in its complaint headed "Facts," and recites under that heading things certain persons did or failed to do in relation to plaintiff's roof replacement and its insurance coverage with Lexington, doc. 19 at 2-7, ¶¶ 5-37, when plaintiff states in a conclusory way the precise claims plaintiff is making against York, plaintiff does not provide any enlightenment by way of factual allegations as to which, if any, of the facts set forth under the "Facts" heading are pertinent to, or support, plaintiff's claims against York. Id. at 12-14, ¶¶ 77-95. The reader of the pleading is left to speculate on that subject.

Moreover, to whatever extent plaintiff is making a claim or claims against York based on representations allegedly made by a representative of York, plaintiff fails to comply with the Rule 9(b) requirements, as they have been defined by the Fifth Circuit, that the pleading specify the statements contended to be false, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent. In

10

18-10713.448

other words, plaintiff has failed to satisfy the who, what, when, where, and how of the events constituting the alleged misrepresentations or false statements.

As discussed below, there are other reasons why plaintiff's allegations against York fail to state a claim upon which relief may be granted.

A.   Texas Insurance Code Claims (the Section X Claims)

There is no allegation from which the conclusion could be reached that section 541.060(a)(2)(A) has any potential applicability to York. An adjusting firm, such as York is, cannot be held liable under that section because it is neither the insurer nor someone with settlement authority on behalf of the insurer. See Lopez v. United Prop. & Cas. Ins. Co., 197 F. Supp. 3d 944, 950 (S.D. Tex. July 11, 2016)(noting that "[t]he majority of federal courts that have addressed [section 541.060(a)(2)(A)] have found that [it] applies only to insurers, and that it does not apply to adjusters"); see also McClelland v. Chubb Lloyd's Ins. Co., No. 5:16-CV-00108, 2016 WL 5791206, at *3 (W.D. Tex. Sept. 30, 2016); Merritt Buffalo Events Ctr., L.L.C. v. Cent. Mut. Ins. Co., No. 3:15-CV-3741-D, 2016 WL 931217, at *4 (N.D. Tex. Mar. 11, 2016); Mainali Corp. v. Covington Specialty Ins. Co., No. 3:15-CV-1087-D, 2015 WL 5098047, at *4 (N.D. Tex. Aug. 31, 2015).

11

18-10713.449

The next section of the Texas Insurance Code upon which plaintiff relies is section 541.060(a)(3). The case law makes clear that it cannot form the basis of a claim in a case such as this against an adjusting company, such as York. See Lopez, 197 F. Supp. 3d at 950 ("[A]n adjuster cannot be held liable under § 541.060(a)(3) because an adjuster has no obligation to provide a policyholder a reasonable explanation of the basis in the policy for the insurer's denial of a claim, or offer of a compromise settlement of a claim." (citations and quotation marks omitted)); see also McClelland, 2016 WL 5791206 at *3 (Section 541.060(a)(3) "is similarly inapplicable to adjusters because, just as adjusters do not have the authority to affirm or deny coverage, they have 'no obligation to provide a policyholder a reasonable explanation of the basis in the policy for the insurer's denial of a claim, or offer of a compromise settlement of a claim'" (quoting Mainali Corp., 2015 WL 5098047 at *4)).

Similarly, plaintiff's reliance on section 541.060(a)(7) as basis for a claim against York is equally misplaced. Those who can be held liable under that section "are the insurance company or the individual at the insurance company who refuses to pay the claim, not the individual responsible for conducting the investigation." Messersmith v. Nationwide Mut. Fire Ins. Co., 10 F. Supp. 3d 721, 725 (N.D. Tex. 2014); see also McClelland,

18-10713.450

2016 WL 5791206 at *3; <u>Meritt Buffalo Events Ctr., L.L.C.</u>, 2016 WL 931217 at *4.

Plaintiff fares no better in its attempt to base a claim against York based on section 541.060(a)(1). For a representation contemplated by that section to be actionable, "[t]he misrepresentation must be about the details of a policy, not the facts giving rise to a claim for coverage." <u>Messersmith</u>, 10 F. Supp. 3d at 724; <u>see also</u> <u>Meritt Buffalo Events Ctr., L.L.C.</u>, 2016 WL 931217 at *4. Plaintiff does not identify which specific facts give rise to this purported violation, or which policy provision York might have misrepresented. Instead, plaintiff relies on the previously listed factual allegations, leaving the court and defendants to speculate as to which specific facts might give rise to any liability under 541.060(a)(1). In other words, plaintiff has not alleged such a claim with the specificity required by Rule 9. Because plaintiff failed to clearly identify the requisite "who, what, when, where, and how" of any purported violation related to any of the statements it alleges York, or York through Forman, made, such claim should be dismissed. <u>Dorsey</u>, 540 F.3d at 339.

Moreover, none of the statements alleged by plaintiff, if the court were to guess which of York's statements was intended to support plaintiff's section 541.060(a)(1) claim, involves the

13

18-10713.451

details of the policy.  Messersmith, 10 F. Supp. 3d at 724

(defendant must represent that plaintiff "would receive a

particular kind of policy that it did not receive" or "denied

coverage against loss under specific circumstances that it

previously had represented would be covered.").

Thus, plaintiff has not stated a claim against York for

violation of any part of § 541.060 of the Texas Insurance Code.

B.     Deceptive Trade Practices Act Claims (the Section XI Claim)

Plaintiff's complaint next alleged claims against York for

violations of the DTPA.  The DPTA provides recourse to consumers

who are victims of "[f]alse, misleading, or deceptive acts or

practices in the conduct of any trade or commerce" to recover for

such clams.  Tex. Bus. & Com. Code § 17.46(a).  The elements of a

DTPA claim are: "(1) the plaintiff is a consumer; (2) the

defendant engaged in false, misleading, or deceptive acts; and

(3) these acts constituted a producing cause of the consumer's

damages".  Hugh Symons Group, plc v. Motorola, Inc., 292 F.3d

466, 468 (5th Cir. 2002).  Claims under the DTPA are subject to

the heightened pleading requirements of Rule 9(b).  Berry v.

Indianapolis Life Ins. Co., 608 F. Supp. 2d 785, 800 (N.D. Tex.

Mar. 11, 2009).

18-10713.452

Plaintiff specifically alleged that plaintiff violated sections 17.46(b)(7) and (b)(12), and section 17.50(a)(4) by:

    a.    [Representing] that [York's] services were of a particular standard, quality, or grade, when they were of another.

    b    [Representing] that an agreement confers or involves rights, remedies, or obligations which it does not have or involve.

    c.    [Employing] an act or practice in violation of the Texas Insurance Code, Chapter 541, as more specifically enumerated in Section VII, above.

Doc. 19 at 13, ¶¶ 87-89.  These statements, taken together, demonstrate another instance where plaintiff has failed to point to the specific factual allegations supporting its claims. Plaintiff merely cited the statutory language and left it up to the court's and the defendants' imagination as to what factual allegations support plaintiff's claims.  Plaintiff's attempt to cross-reference or incorporate by reference section VII of the amended complaint fairs no better, as that section of the amended complaint consists solely of conclusory allegations against Lexington.  Plaintiff has not identified the "who, what, when, where, and how" of the purported violations.  <u>Dorsey</u>, 540 F.3d at 339.  Even speculating which facts might apply, the court finds that plaintiff has failed to state any claim against York.

15

18-10713.453

C.    Promissory Estoppel Claim (the Section XII Claim)

Plaintiff finally urges the court in its complaint that "York is estopped from claiming that Plaintiff is not entitled to proceeds that were expended to bring Plaintiff's roof into compliance with City of Fort Worth Building Codes."  Doc. 19 at 14, ¶ 93.

"Although promissory estoppel is normally a defensive theory, it is an available cause of action to a promisee who relied to his detriment on an otherwise unenforceable promise." Frost Crushed Stone Co., Inc. v. Odell Greer Constr. Co., 110 S.W.3d 41, 44 (Tex. App.—Waco 2002, no pet.) (citing Wheeler v. White, 398 S.W.2d 93, 96-97 (Tex. 1965)).  The requisite elements of a promissory estoppel claim are: (1) a promise, (2) foreseeability of reliance thereon by the promisor, (3) substantial reliance by the promisee to his detriment. MetroplexCore, L.L.C. v. Parsons Transp., Inc., 743 F.3d 964, 977 (5th Cir. 2014); see also English v. Fischer, 660 S.W.2d 521, 524 (Tex. 1983); Frost Crushed Stone Co., Inc., 110 S.W.3d at 44.

To support its promissory estoppel claim, plaintiff alleges that (1) York worked directly with JE Roofing to the exclusion of plaintiff, (2) plaintiff relied on York to adjust the claim properly and to monitor the costs associated with roof replacement, (3) York "promised to prepare and present an 'agreed

16

18-10713.454

scope'" for plaintiff's roof repair, (4) York knew or should have known plaintiff would rely on this promise, (5) plaintiff relied to its detriment on York's promise, and (6) such reliance was the producing cause of plaintiff's damages.  Doc. 19 at 14, ¶¶ 93-95.

York argues that plaintiff "has not sufficiently alleged a 'definite, unconditional promise' by York," "has [] failed to allege that it substantially relied on any promise by York, much less that its reliance was both reasonable and justified," or that plaintiff materially changed its position in reliance on York's promise.  Doc. 21 at 15-16.  York further challenges plaintiff's pleadings on the grounds that, among other things, plaintiff is attempting to use promissory estoppel "despite the presence of related contractual agreements."  Id. at 16.

A promissory estoppel claim requires a "definite, unconditional promise," Elite Ctr. for Minimal Invasive Surgery, LLC v. Health Care Serv. Corp., 221 F. Supp. 3d 853, 863 (S.D. Tex. 2016), that is "sufficiently specific and definite so that it would be reasonable and justified for the promisee to rely on it." Davis v. Tex. Farm. Bureau Ins., 470 S.W.3d 97, 108 (Tex. App.-Houston [1st Dist.] 2015, no pet.).  And, the promisee's reliance on the promise must be "reasonable and justified." Addicks Servs., Inc. v. GGP-Bridgeland, LP, 596 F.3d 286, 300 (5th Cir. 2010).

17

18-10713.455

Having reviewed plaintiff's pleadings, the court is satisfied that plaintiff has failed to state an affirmative promissory estoppel claim against York. The nearest to a promise alleged by plaintiff is that York said it would "prepare and present an 'agreed scope'" for plaintiff's roof repair. Doc. 19 at 14, ¶ 94. Apparently, this "promise" was made when Forman sent an email stating, "[w]hen you receive a copy of the engineering report and related invoice from Jeff Eubank Roofing, please forward me a copy for review so we can develop an agreed scope for the additional decking required." Doc. 19 at 4, ¶ 14; supra at 2 n. 2. Such statement is too vague and indefinite to constitute a promise to satisfy plaintiff's pleading requirement on this claim. Elite Ctr. for Minimal Invasive Surgery, LLC, 221 F. Supp. 3d at 863. And, the remaining elements of the promissory estoppel claim have been alleged in a conclusory manner, without factual underpinnings to support them.

Plaintiff also urges in its response to York's motion that paragraphs 20, 21, 22, at 25 of the amended complaint allege promises York made to plaintiff. Doc. 23 at 9. However, a review of plaintiff's amended complaint does not point to any of these statements as promises supporting its promissory estoppel claim against York. Even if it did, plaintiff has not alleged

18

18-10713.456

that it relied on those statements to its detriment, nor that such reliance was foreseeable by defendant.

For these additional reasons, the court finds that plaintiff has failed to plead a promissory estoppel claim.

V.

Order

Therefore, for the foregoing reasons,

The court ORDERS that the motion of York be, and is hereby, granted, and plaintiff's claims against York be, and are hereby, dismissed.

The court determines that there is no just reason for delay in, and hereby directs, entry of final judgment as to the dismissal of plaintiff's claims against York.

The court further ORDERS that from this point forward, the only defendant in this action is Lexington and the style of this case is "University Baptist Church of Fort Worth, Plaintiff, v. Lexington Insurance Company, Defendant."

SIGNED May 23, 2018, effective May 16, 2018.

_____
JOHN McBRYDE
United States District Judge

18

TAB 6

ORIGINAL

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

2018 JUN 14  AM 10: 42

CLERK OF COURT
WC

| | | |
|---|---|---|
| UNIVERSITY BAPTIST CHURCH OF FORT WORTH, | § § § § § § | |
| Plaintiff, | | |
| v. | § | CAUSE NO.  4:17-CV-962-A |
| LEXINGTON INSURANCE COMPANY, KEVIN FORMAN and YORK RISK SERVICES, INC. | § § § § § | |
| Defendants. | § § | |

## NOTICE OF APPEAL

TO THE HONORABLE COURT:

Notice is hereby given that Plaintiff, University Baptist of Fort Worth, appeal to the United States Court of Appeals for the Fifth Circuit from the Final Judgment entered in this action on May 16, 2018 (Doc. 31) and from all underlying decisions, orders and rulings relating to, supporting, or incorporated by such Final Judgment including but not limited to the following orders and opinions:

(i)  The Amended Memorandum Opinion and Order dated May 23, 2018 (Doc. 32) granting the Motion to Dismiss filed by Defendant York Risk Services Group, Inc.

(ii)  The Memorandum Opinion and Order dated May 16, 2018 (Doc. 30) granting the Motion to Dismiss filed by Defendant York Risk Services Group, Inc.

Dated: June 14, 2018.

Respectfully submitted,

TIMOTHY M. HOCH
Texas Bar No. 09744950
HOCH LAW FIRM, P.C.
5616 Malvey Avenue
Fort Worth, Texas 76107
Tel. (817) 731-9703
Fax (817) 731-9706
tim@hochlawfirm.com

ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I, the undersigned attorney, do hereby certify that a true and correct copy of the foregoing document was forwarded to the following counsel of record on this 14 day of June, 2018 in accordance with the Federal Rules of Civil Procedure:

Brett A. Wallingford
Texas Bar No. 00797618
bwallinfgord@zelle.com
Walter W. Cardwell IV
Texas Bar No. 24094419
wcardwell@zelle.com
Zelle LLP
901 Main Street, Suite 4000
Dallas, TX  75202-3975

ATTORNEYS FOR DEFENDANT,
LEXINGTON INSURANCE COMPANY

Robert M. Rosen
Texas Bar No. 24060520
rrosen@pmmclaw.com
David A. Walton
Texas Bar No. 24075623
dwalton@pmmclaw.com
Ryan D. Starbird
Texas Bar No. 24075623
rstarbird@pmmclaw.com
Parsons McIntire McCleary & Clark, PLLC
1700 Pacific Avenue, Suite 4400
Dallas, TX  75201

ATTORNEYS FOR DEFENDANT,
YORK RISK SERVICES GROUP, INC.

TIMOTHY M. HOCH

18-10713.459