**No. 18-10713**

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

UNIVERSITY BAPTIST CHURCH OF FORT WORTH,

*Plaintiff-Appellant.*

v.

YORK RISK SERVICES GROUP INCORPORATED,

*Defendant-Appellee.*

---

On appeal from the United States District Court
for the Northern District of Texas
Case No. 4:17-CV-962-A, Judge John H. McBryde

---

**REPLY BRIEF OF APPELLANT**

---

William D. Taylor (TX 24046954)
Taylor & Taylor Law, P.C.
4115 Highgrove Dr.
Arlington, TX 76001
817.483.8388
Fax: 817.483.8390
Email: wtaylor@taylorandtaylorlaw.com
*Counsel for Appellant*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iii

ARGUMENT ....................................................................................................................... 1

I.    Introduction ................................................................................................................. 1

II.   UBC Correctly Cited the Applicable legal standards .................................................. 2

III.   The Court should reverse the district court's dismissal of claims under Chapter 541 of the Insurance Code. ................................................................................................. 6

   A.    UBC has alleged facts sufficient to satisfy the Federal Rules. ........................... 6

   B.    UBC's claims are just as applicable to adjustors as they are to the insurers. .... 8

     1.    Insurance adjustors may be liable under Sections 541.060(a)(2), (a)(3), and (a)(7) ............................................................................................................... 8

     2.    The plain language of Section 541.060(a)(1) demonstrates that it is not limited to representations about policy terms. ....................................................... 14

IV.   The Court should reverse the district court's dismissal of claims under the Deceptive Trade Practices Act .......................................................................................... 15

V.    Conclusion ................................................................................................................. 16

CERTIFICATE OF SERVICE ......................................................................................... 17

CERTIFICATE OF COMPLIANCE ............................................................................... 18

# TABLE OF AUTHORITIES

## Federal Causes

*Caruth v. Chubb Lloyd's Ins. Co.,* No. 3:17-CV-2748-G, 2018 WL 3934030, 2018 U.S. Dist. LEXIS 138664 (N.D. Tex. 2018) ….….……………………………    3

*Castaneda v. Nationwide Prop. & Cas. Ins. Co.,* No. H-10-2818, 2011 U.S. Dist. LEXIS 98521 (S.D. Tex. 2011) ……………………...…………………….    10

*Clark v. State Farm Lloyds*, No. 3:01-CV-1478-L, 2001 WL 1516762, 2001 U.S. Dist. LEXIS 19304 (N.D. Tex. 2001) ………..…………….…..………….    9

*Centaurus Unity, LP v. Lexington Ins. Co.*, 766 F. Supp. 2d 780 (S.D. Tex. 2011)…9

*Denley Group, LLC v. Safeco Insurance Company of Indiana*, No. 3:15-CV-1183-B, 2015 WL 5836226 (N.D. Tex.) ……………………….……………………….8-9

*Garcia v. Chubb Lloyds Ins. Co.,* No. SA-16-CA-568-FB, 2016 U.S. Dist. LEXIS 195257 (W.D. Tex. 2016)…………………….……………………………..    8

*Grimes v. Nationwide Prop. & Cas. Ins. Co.*, Civil Action No. 4:10-cv-4625, 2011 U.S. Dist. LEXIS 134456 (S.D. Tex. 2011) …………..………………….    2

*Khan v. Allstate Fire and Cas. Ins. Co.*, NO. CIV.A. H-11-2693, 2012 WL 1601302 (S.D. Tex.) …………………………………………...…………...…    3

*Lopez v. United Prop. & Cas. Ins. Co.,* 197 F. Supp. 3d 944 (S.D. Tex. 2016)………………………………………………………………….  10, 11

*Messersmith v. Nationwide Mut. Fire Ins. Co.*, 10 F. Supp. 3d 721 (N.D. Tex. 2014) ………………………………………………….…………  8, 10-12

*Murillo v. Allstate Vehicle*, 7:18-CV-208, 2018 WL 3862108 (S.D. Tex. 2018)….. 2

*OneBeacon Insurance Company v. T. Wade Welch & Associates,* 841 F.3d 669 (5th Cir. 2016) …………………………………………………………………    3

*Roach v. Allstate Vehicle & Prop. Ins. Co.,* 3:15-CV-3228-G, 2016 WL 795967 (N.D. Tex.) ……………………………………………………….…    13

*Russell v. State Farm Lloyds*, No. 3:01-CV-1305-D, 2001 WL 1326501, 2001 U.S. Dist. LEXIS 16722 (N.D. Tex. 2001) …………………..…………………    9

*Singh & Singh LLC v. Berkley Assurance Co.*, No. 4:16-CV-00481-O, 2017 U.S. Dist. LEXIS 217928 (N.D. Tex. 2017) …………………………………………. 2

*Shipley v. Nat'l Fire Ins.*, CA3:95-0972-BC, 1998 U.S. Dist. LEXIS 9952 (N.D. Tex. 1998)…………………………………………………………………...… 9

*Severance v. Patterson*, 566 F.3d 490 (5th Cir. 2009) ……………………….. 4

*Tommaso v. State Farm Lloyds,* 7:15-CV-00274, 2016 WL 6883042, 2016 U.S. Dist. LEXIS 188842 (S.D. Tex. 2016)……………………………….. 11, 13

*United States ex rel. Grubbs v. Ravikumar Kanneganti*, 565 F.3d 180 (5th Cir. 2009)……………………………………………………………………… 4

*U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375 (5th Cir. 2003) ……………………………………………………………………… 4

## State Cases

*Doss v. Warranty Underwriters Ins. Co.*, 04–11–00776–CV, 2012 WL 5874316, 2012 Tex. App. LEXIS 959 (Tex. App.–San Antonio Nov. 21, 2012, no pet.)………………………………………………………………….11-12

*Richardson E. Baptist Church v. Phila. Indem. Ins. Co.*, No. 05-14-01491-CV, 2016 WL 1242480, 2016 Tex. App. LEXIS 3267(App.—Dallas Mar. 30, 2016, pet. denied)……………………………………………………………… 11-13

*Equitas Reinsurance Ltd. v. Browning-Ferris Indus., Inc.,* NO. 14-99-01084-CV, 2001 WL 422765, 2001 Tex. App. LEXIS 2710 (App.—Houston [14th Dist.] Apr. 26, 2001, no pet.)……………………………………………………….. 13

## State Statutes

Tex. Bus. & Com. Code § 17.45……………………………………………… 3

Tex. Bus. & Com. Code § 17.50…......……………………………..…….. 15

Tex. Ins. Code § 541.060………………………………………… *passim*

Tex. Ins. Code § 542.003………………………………………….. 12

## <u>ARGUMENT</u>

I.    <u>**INTRODUCTION**</u>

This is the first of two related appeals brought by University Baptist Church ("UBC") from a single district court case.  More particularly, this appeal involves claims against an insurance adjustor, York Risk Services Group Inc., which were dismissed on a motion under 12(b)(6).  The second appeal, No. 18-11415, involves related claims against the insurer, Lexington Insurance Company, which were dismissed on summary judgment.  The appeals have been brought separately because the district court issued a partial final judgment as to the adjustor, while the claims against Lexington remained pending.  UBC believes the cases should be heard together, and anticipates brining a motion to consolidate the cases for consideration. However, as the first appeal was substantially briefed before the second was filed, UBC has not sought to consolidate the briefing and hereby files its reply on the first appeal.

In its opening brief, UBC demonstrated that it sufficiently pled claims under four sections of the Texas Insurance Code (sections 541.060(a)(1), (a)(2), (a)(3), and (a)(7)), as well as a related claim under the Texas Deceptive Trade Practices Act (DTPA), and a claim for promissory estoppel.

## II.    UBC CORRECTLY CITED THE APPLICABLE LEGAL STANDARDS.

In response to UBC's brief, York first asserts that UBC has "watered down" the pleading requirements by citing the wrong legal standards. However, UBC has done no such thing, but has instead cited the standards prescribed by the plain language of the Rules and applicable case law.

First, York is incorrect in asserting that Rule 9(b) applies to all types of claims under the Texas Insurance Code or DTPA. *See* York's Brief at 18. Although some lower courts have broadly asserted that Texas district courts "consistently apply Rule 9(b)'s requirements to claims under the Texas Insurance Code and DTPA," *see* York's Brief at 18, such assertion has no principled basis and is contrary to the plain language of Rule 9. Instead, York's own authorities admit Rule 9 applies only to "statutory claims which are based on allegations of fraud." *See* York's Brief at 18 (citing *Murillo v. Allstate Vehicle*, 7:18-CV-208, 2018 WL 3862108, at *2 (S.D. Tex. Aug. 13, 2018)).

As such, Rule 9(b) does not apply to claims under sections 541.060(a)(2), (a)(3), and (a)(7), since such claims are not based in fraud. *See, e.g., Grimes v. Nationwide Prop. & Cas. Ins. Co.*, Civil Action No. 4:10-cv-4625, 2011 U.S. Dist. LEXIS 134456, at *18-20 (S.D. Tex. 2011) (holding that Rule 9(b) does not apply to section 541.060(a)(2), (a)(3), or (a)(7); *see also Singh & Singh LLC v. Berkley Assurance Co.*, Civil Action No. 4:16-CV-00481-O, 2017 U.S. Dist. LEXIS 217928, at *6-7 (N.D. Tex. 2017) (determining that Rule 9(b) does not apply to section 541.060(a)(2) but finding

2

plaintiff has not stated claim under Rule 8).  For the same reason, as UBC previously explained, Rule 9(b) does not apply to DTPA claims that are based on these Insurance Code sections.  *See* UBC's Brief at 27 (citing *Khan v. Allstate Fire and Cas. Ins. Co.*, NO. CIV.A. H-11-2693, 2012 WL 1601302, 2012 U.S. Dist. LEXIS 63842, *11, *21-26 (S.D. Tex. May 07, 2012)).  Moreover, it is questionable whether Rule 9(b) even applies to claims under section 541.060(a)(1), which involves misrepresentations but does not specify a required state of mind.  *See Caruth v. Chubb Lloyd's Ins. Co.,* No. 3:17-CV-2748-G, 2018 WL 3934030, 2018 U.S. Dist. LEXIS 138664, at *10-12 (N.D. Tex. 2018) (Fish, J.) (declining to decide whether Rule 9(b) applies to claims under section 541.060).

Second, York cites *OneBeacon Insurance Company* for the proposition that "knowingly" means "actual awareness of the falsity, unfairness, or deceptiveness" of the act at issue.  York's Brief at 10 (citing *OneBeacon Insurance Company v. T. Wade Welch & Associates,* 841 F.3d 669, 679 (5th Cir. 2016)).  However, this citation has no bearing on whether a claim is based in fraud or not.  To the contrary, *OneBeacon* dealt with the meaning of "knowingly" in the context of enhanced damages under the DTPA, with this court determining that "knowingly" required actual knowledge of the underlying factors required by various sections of the DTPA (falsity, deception, or unfairness).  *See* Tex. Bus. & Com. Code § 17.45(9) (Lexis Advance).  To be sure, some sections of the DTPA require averments of fraud, but the statutes at issue in this case do not.  Rather, they are "unfair" acts that are not based in fraud, and the term "knowingly"

3

does not convert these non-fraud claims to fraud claims. *See* Tex. Ins. Code §
541.060. To use a somewhat extreme example for comparison, actual knowledge may
turn negligent homicide into murder, but it would not turn negligent homicide into
fraud. Likewise, actual knowledge may turn a failure to effectuate settlement into a
more egregious failure, but would does not turn such a failure into fraud.

Next, York asserts that UBC has improperly cited out-of-circuit cases regarding
the relaxation of pleading requirements when facts are in the possession of any
opposing party.[1] To the contrary, York's citations are in accord with this Court's
recognition that: (1) even in the Rule 9(b) context, pleading requirements may be
lowered when facts are "peculiarly within the perpetrator's knowledge," *U.S. ex rel.
Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 385 (5th Cir. 2003); and (2)
the typical "who, what, when" requirements of Rule 9(b) were developed in the
context of common-law and securities fraud and may not necessarily be required to
plead other types of fraudulent conduct, which should be evaluated in a flexible
manner consistent with the claims at issue, *see United States ex rel. Grubbs v. Ravikumar
Kanneganti*, 565 F.3d 180, 188-90 (5th Cir. 2009). In any event, even Rule 9(b) does
not require the level of detail required to prevail at trial, *id.* at 190, and Rule 8 requires
only enough factual matter to push the claim beyond the realm of speculation and
into the realm of plausibility.

---

[1] In this case, the facts peculiarly within the opponent's knowledge (such as the division of
responsibilities between the adjustor and insurer) would not be subject to Rule 9(b) in any event.

4

Fourth, UBC has not asked the Court to accept any unwarranted inferences, but has expressly stated that the Court should "draw all *reasonable* inferences in the [claimant's] favor." *See* UBC's Brief at 13 (quoting *Severance v. Patterson*, 566 F.3d 490, 501 (5th Cir. 2009) (emphasis added)).  Nor is there any mystery to the proper treatment of inferences in this context.  The Court's task is not to draw its own inferences from the alleged facts, but to consider the full range of inferences that a jury could draw, and then to apply all reasonable inferences against dismissal.  The Court routinely applies such standards, and no further discussion is necessary.

Finally, York takes issue with the statement that dismissal is not proper "unless the court determines it is beyond doubt that [the claimant] cannot prove a **plausible set of facts** to support its allegations," apparently accusing UBC of attempting to reinstate the "no set of facts" language from *Conley*.  See York's Brief at 23 (citing UBC's Brief at 20) (emphasis added by York).  To the contrary, UBC said exactly what it meant, using language that this Court has approved in multiple cases since *Twombly* and *Iqbal* were decided.

In any event, the foregoing discussion should ultimately be unnecessary to resolution of this appeal.  As set forth below and in its opening brief, UBC has stated valid claims regardless of the applicable standards.

III.    **THE COURT SHOULD REVERSE THE DISTRICT COURT'S DISMISSAL OF CLAIMS UNDER CHAPTER 541 OF THE INSURANCE CODE.**

Having established the proper standards, there is little question that UBC stated Insurance Code claims against York.  As explained in UBC's brief and below, the allegations of the amended complaint are sufficient to satisfy federal pleadings standards.  *See* UBC's Brief at 22-26.  Likewise, UBC demonstrated that the alleged statutory claims apply to York as an adjustor, just as they apply to insurers.  *See* UBC Brief at 16-22.

A.    **UBC has alleged facts sufficient to satisfy the Federal Rules.**

As alleged, in November 2016, UBC received a flat-rate bid for the relevant work at a cost of $285,798; which represented approximately one third of the ultimate cost (and which York's briefing calls a "gross underestimate").[2]  *See* UBC's Brief at 5-6 (citing, e.g., ROA.239 at ¶ 16, ROA.241 at ¶ 25); York's Brief at 36 n.7.   Even at that point, it was reasonably clear that the cost necessarily would exceed the policy limits, and the claim for policy limits should have been paid in full.   Instead, York requested a more detailed breakdown of costs, which further confirmed that the bid was a low bid, as the contractor appeared to acknowledge that it would bear additional costs that were not being included in its fixed bid.  *See* ROA.240 at ¶18.  Therefore, by the end

---

[2] The term "gross underestimate" is taken from York's improper citation to a portion of the district court's summary judgment order.  Although this order may not be considered on this appeal (and indeed is wholly irrelevant except to the extent that is shows the appeals should be considered together), the terminology is a useful description of this portion of the allegations—York refused to adjust the claim for policy limits, even though the policy limits had already been exceeded by a "gross[ly] underestimate[d] bid."

of December, if not in November 2016, York had no good faith basis for not acknowledging that UBC was entitled to the full value of the policy limits.  But York did not approve payment of the claim for policy limits . . . or ask for any other necessary information  . . . or even deny the claim outright (any of which would have allowed UBC to maintain the benefit of its bargain with the contractor).

Instead, York did something entirely different, by instructing the contractor to proceed on an uncapped "time and materials" basis.  *See* UBC's Brief at 5 (citing, e.g., ROA.240 at ¶ 19).  If this decision could ever be justified, it could only be justified if York had a genuine basis for believing that the "time and materials" basis would result in costs that were not only less than the bid, but also less than the policy limits.  Yet the amended complaint alleges facts that indicate just the opposite—that York had no basis for believing the costs would be less than the policy limits and that it instead expected the costs to *greatly* exceed the policy limits.  *See* UBC's Brief at 6-7 (citing, *e.g.,* ROA.240-42 at ¶¶ 21, 27, 32, 34).   This is not an example of "effectuating" a fair settlement or reasonably investigating a claim; it is just the opposite.  As such, these allegations alone state plausible claims under Insurance Code sections 541.060(a)(2) and (a)(7).[3]

Moreover, the broader context of York's move to a "time and materials" framework further supports claims under the insurance code.  In instructing the

---

[3] In fact, if this case were not in the insurance context, the allegations might well state a claim for tortious interference with UBC's contract with its contractor.  However, the allegations are certainly sufficient to state a claim under the greater protections afforded by the Insurance Code.

contractor to proceed on a time-and-materials basis, York did not explain the reasons for not paying the full policy limits or inform UBC of the risks of moving to an unusual and uncapped time-and-materials framework. Instead, York obscured the risks by indicating, for instance, that all costs would be paid under this framework. *See, e.g.,* UBC's Brief at 6-7 (citing, *e.g.*, ROA.240 at ¶¶ 21-22. As such, UBC has not only stated claims under sections 541.060(a)(2) and (a)(7), but has also stated claims under sections 541.060(a)(1) and (a)(3), as discussed in more detail in UBC's original brief. *See* UBC's Brief at 22-26.

**B.    UBC's claims are just as applicable to adjustors as they are to the insurers.**

The only remaining questions, then, are whether York is subject to UBC's statutory claims as an adjustor, or whether the statutory claims apply only to the insurer, Lexington Insurance Company. As discussed below and in UBC's brief, the statutory provisions apply equally to adjustors such as York. *See* UBC's Brief at 16-22.

**1.    *Insurance adjustors may be liable under Sections 541.060(a)(2), (a)(3), and (a)(7).***

As to the application of sections 541.060(a)(2), (a)(3), and (7), little discussion is needed, since UBC already anticipated and addressed the bulk of York's arguments (*e.g.,* by demonstrating the incorrect reasoning of the *Messersmith* cases in light of the statutory language, this Court's precedents , etc.). *See* UBC's Brief at 16-20. Instead, UBC need only correct a few points from York's brief.

While York asserts that courts throughout Texas have followed the *Messersmith* line of cases, it is equally true that courts throughout Texas have rejected those cases and agree with UBC that these provisions can apply to adjustors.  If it were important to do so, York could cite a litany of district cases supporting its position, and it could do so over a range of almost two decades.  *See, e.g., Garcia v. Chubb Lloyds Ins. Co.,* No. SA-16-CA-568-FB, 2016 U.S. Dist. LEXIS 195257, at \*19-21 (W.D. Tex. 2016); *Denley Group, LLC v. Safeco Insurance Company of Indiana*, No. 3:15-CV-1183-B, 2015 WL 5836226, at \*3-4, 2015 U.S. Dist. LEXIS 133432, at \*8 (N.D. Tex. Sept. 30, 2015); *Centaurus Unity, LP v. Lexington Ins. Co.*, 766 F. Supp. 2d 780, 786-87 (S.D. Tex. 2011); *Clark v. State Farm Lloyds*, No. 3:01-CV-1478-L, 2001 WL 1516762, 2001 U.S. Dist. LEXIS 19304, at \*3-8 (N.D. Tex. 2001) (determining that the prior statue, article 21.21 §4(10), would apply to adjustors); *Russell v. State Farm Lloyds*, No. 3:01-CV-1305-D, 2001 WL 1326501, 2001 U.S. Dist. LEXIS 16722, at \*7 (N.D. Tex. 2001) (accord); *Shipley v. Nat'l Fire Ins.*, CA3:95-0972-BC, 1998 U.S. Dist. LEXIS 9952, at \*9 (N.D. Tex. 1998) (accord).

However, as UBC previously noted, the "persuasive value of district court opinions is measured by the weight of their reasoning and not by the weight of their numbers."  UBC's Brief at 17.  Thus, rather than attempting to exhaustive cite lower courts, UBC has instead demonstrated that its authorities represent the better-reasoned line of cases, and nothing in York's brief undermines that reasoning.  *See* UBC's Brief at 16-20 (collecting cases).

For the same reason, there is no merit to the assertion that the Court should ignore cases decided in the context of improper joinder. While courts in those cases are required to construe the law in favor of remand, the fact that UBC authorities properly applied that principle does nothing to undermine their reasoning, which demonstrates the applicability of these code provisions to adjustors. *See, e.g., Denley Group, LLC v. Safeco Insurance Company of Indiana*, No. 3:15-CV-1183-B, 2015 WL 5836226, at *3-4, 2015 U.S. Dist. LEXIS 133432, at *8 (N.D. Tex. Sept. 30, 2015).[4] Moreover, if authority from the Rule 12(b)(6) context were required to support UBC's interpretation, such authority has been in place since before *Messersmith* was decided. *See, e.g., Castaneda v. Nationwide Prop. & Cas. Ins. Co.,* No. H-10-2818, 2011 U.S. Dist. LEXIS 98521, at *10-11 (S.D. Tex. 2011) (denying motion to dismiss claims against both insurer and adjustor under sections 541.060(a)(2), (a)(3), and (a)(7)).

Likewise, on this point, there is no reason to distinguish cases that were decided under state-court pleading standards (or on summary judgment or in any other context). Regardless of the pleading standard to be applied, the interpretation of a statute presents a distinct and separate issue that is decided by a matter of law. Regardless of the standard for evaluating particular allegations (or evidence), the statutory construction does not change. Therefore, regardless of the context, the only

---

[4] Many of the *Messersmith* cases were also decided in the context of motions to remand (including *Messersmith* itself), but without complying with the principle that any disputes in the law be construed in favor of remand. *See, e.g., Messersmith v. Nationwide Mut. Fire Ins. Co.,* 10 F. Supp.3d 721 (N.D. Tex. 2014).

10

significance of any of the lower-court opinions is the quality of their reasoning, and the reasoning of the cited authorities favors application of the code provisions to adjustors.

In turn, the only unaddressed issues regarding the reasoning of the *Messersmith* cases are found in York's discussion of the *Lopez* and *Tomaso* opinions. *See* York's Brief at 29-30. These cases followed the *Messersmith* cases for three ostensible reasons, but none have merit. *See Lopez v. United Prop. & Cas. Ins. Co.,* 197 F. Supp. 3d 944, 950 (S.D. Tex. 2016); *Tommaso v. State Farm Lloyds,* 7:15-CV-00274, 2016 WL 6883042, 2016 U.S. Dist. LEXIS 188842, at *12 n.75 (S.D. Tex. 2016).

First, each case based its decision in part on the *Messersmith* cases, but neither provided a basis for finding the *Messersmith* cases more persuasive that *Roach, Denley,* or any of the other cases opposed to *Messersmith*. Like the bulk of the *Messersmith* cases, the decisions simply avoid any analysis of the plain meaning of the statutory language or its use by the legislature. *See Lopez,* 197 F. Supp. 3d at 950; *Tommaso,* 2016 U.S. Dist. LEXIS 188842 at *12 n.75. Whatever these courts found persuasive about the *Messersmith* cases, their discussion provides no basis for persuading others.

Second, in a genuinely new twist, the *Lopez* court cited two state cases—*Doss* and *Richardson E. Baptist Church*—and the citation to these cases was apparently significant to the *Tomaso* court's decision to follow it. *See Lopez,* 197 F. Supp. 3d at 950; *Tommaso,* 2016 U.S. Dist. LEXIS 188842 at *12 n.75. However, neither case supports York's position here.

11

First, *Lopez* cited *Doss* for the proposition that provisions such as section 541.060(a)(2) apply "only to the insurer-insured relationship," but *Doss* made this statement in an entirely unrelated context. Specifically, the court was asked to decide whether an insurer-insured relationship still existed after a judgment, or whether the relationship was solely one of debtor-creditor, and the court decided on the latter. *Doss v. Warranty Underwriters Ins. Co.*, 04–11–00776–CV, 2012 WL 5874316, 2012 Tex. App. LEXIS 9591, at *5-7 (Tex. App.–San Antonio Nov. 21, 2012, no pet.). In contrast, *Doss's* reasoning provides no support to the proposition that the insurer-insured relationship excludes persons or entities acting within the "business of insurance," which is the textual scope of section 541.060. In fact, if *Doss* could be read to extend to such a proposition, it would remove adjustors *entirely* from *all* parts of section 541.060, but such a proposition is directly contrary to the plain language of section 541.060 and this Court's precedents. Indeed, even York and the *Messersmith* cases admit that adjustors are subject to at least some aspects of section 5410.060 (such as section 541.060(a)(1)). Therefore, assuming section 541.060 applies only to the insured-insurer relationship, persons acting in the "business of insurance" fall squarely within that relationship.

Likewise, *Richardson E. Baptist Church* provides no support for York's position. *See Richardson E. Baptist Church v. Phila. Indem. Ins. Co.*, No. 05-14-01491-CV, 2016 WL 1242480, 2016 Tex. App. LEXIS 3267, at *25 (App.—Dallas Mar. 30, 2016, pet. denied). Presumably, this case was cited for its determination that section 542.003

12

applies only to insurers and not adjustors. *See Richardson E. Baptist Church,* 2016 Tex. App. LEXIS 3267 at *32. However, section 542.003 is an entirely different statute with an entirely different textual scope—*i.e.* expressly applying only to "*insurers* in the business of insurance." *Id.* (emphasis in original). As such, this portion of *Richardson* is wholly inapplicable to the claims in this case.

A different portion of the *Richardson* opinion did address section 541.060(a)(7), but that portion undermines York's contentions on this point. Although the court found the plaintiff had not established a claim against the adjustor, it did so on the merits of the evidence, rather than a determination that section 541.060(a)(7) was inapplicable to adjustors. *Id.* at *25. Thus, the analysis of *Richardson* is in keeping with other state-court cases that have held these types of claims are applicable to adjustors. *See, e.g., Equitas Reinsurance Ltd. v. Browning-Ferris Indus., Inc.,* NO. 14-99-01084-CV, 2001 WL 422765, 2001 Tex. App. LEXIS 2710, at *11-13 (App.—Houston [14th Dist.] Apr. 26, 2001, no pet.).

Finally, in the most unique twist, *Tommaso* found *Roach* (one of UBC's cited cases) unpersuasive on the ground that "[i]f an adjuster is subject to Section 541(a)(2)(A) by virtue of his ability to indirectly 'effectuate' a prompt fair and equitable settlement with the insured, then *virtually everyone* is subject to Section 541(a)(2)(A), including the unfortunate mailman who less than promptly delivers the insured's insurance check." York's Brief at 30 (quoting *Tommaso,* 2016 U.S. Dist. LEXIS 188842 at *12 n.75 (emphasis in original). While this statement makes a

13

convenient soundbite for York's brief, it is utterly incorrect, as it is directly contradicted by the plain language of section 541.060. Unlike its regulation of adjustors, section 541.060 does not regulate the "unfortunate mailman"—much less "virtually everyone" else—and instead regulates only those in the "business of insurance." *See* Tex. Ins. Code § 541.060. While the "unfortunate mailman" is not in the business of insurance, an adjustor most certainly is, and the adjustor is therefore subject to liability for any violations within the scope of its activities.

### 2.     The plain language of Section 541.060(a)(1) demonstrates that it is not limited to representations about policy terms.

Even less discussion is required to deal with York's contentions regarding interpretation of section 541.060(a)(1), as York does not address UBC's primary argument—which is based on the plain language of the statute. In its brief, UBC analyzed section 541.060 in contrast to related statutes, showing that section 541.060: (1) expressly applies to the settlement context (*i.e.* after a claim); and (2) is broader that other statutes, expressly applying to both misrepresentations of the policy or fact. UBC's Brief at 20-22.

In response, York does not address the plain-language argument. Instead, York merely cites a number of cases, but none undermine UBC's arguments. To the contrary, UBC's citations merely illustrate that the opinions of lower courts cannot be relied on in interpreting this statute. For instance, York simultaneously contends that: (1) section 541.060(a)(1) only applies to misrepresentations about a policy; and (2) that

14

misrepresentations about a policy are not actionable, because an insured is presumed to know the policy terms. *Compare* York's Brief at 44 *with* York's Brief at 54. But if both arguments were correct, they would entirely eliminate the protections of section 541.060(a)(1) from the Insurance Code. Likewise, York asserts that post-loss representations cannot be actionable, yet the scope of section 541.060 is expressly limited to claims in the settlement process, *i.e.* after a loss has occurred. *Compare* York's Brief at 55 *with* Tex. Ins. Code 541.060. Once again, York's position would entirely write section 541.060 out of the insurance code. Here, UBC has alleged that York's actions caused injuries independent of the amounts owed under the policy, and UBC is entitled to pursue its remedy for those injuries.

Thus, the Court should make its own interpretation of section 541.060, based on the plain language of the statute and the contrast with different language used in related statutes. For that purpose, the proper analysis is set forth in UBC's opening brief, and nothing in York's brief or authorities undermines the reasoning therein.

## IV.  THE COURT SHOULD REVERSE THE DISTRICT COURT'S DISMISSAL OF CLAIMS UNDER THE DECEPTIVE TRADE PRACTICES ACT.

As set forth in the parties' briefs, UBC is appealing only the DTPA claim that is based on section 17.50, which incorporates violations of the Insurance Code. In their briefs, the parties agree that this DTPA claim rises or falls to the same extent as the Insurance Code claims discussed above, and no additional briefing is needed.

15

## V.    <u>CONCLUSION</u>

For the reasons set forth above and in UBC's prior brief, this Court should reverse the district court's judgment and remand this action to have these claims resolved on the merits.

Respectfully submitted,


<u>/s/ William D. Taylor</u>
William D. Taylor (TX 24046954)
Taylor & Taylor Law, P.C.
4115 Highgrove Dr.
Arlington, TX 76001
817.483.8388
Fax: 817.483.8390
Email: wtaylor@taylorandtaylorlaw.com
Counsel for Appellant

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing brief was served on Robert Michael Rosen and Ryan Starbird via the Court's electronic filing system on December 3, 2018.

/s/ William D. Taylor

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 3,983 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type and style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in fourteen (14) point "Garamond" font.

<u>/s/ William D. Taylor</u>